# THE STATE ex rel. W. B. HAYS v. W. R. ROBERT-SON et al., Judges of Springfield Court of Appeals.

### In Banc, July 12, 1917.

1. **CONFLICT OF DECISIONS: Similar Facts: Certiorari.** If the decision of the Court of Appeals is opposed to the conclusion reached upon similar facts in the previous cases of the Supreme Court, such decision should be quashed.

2. ———: ———: Foreign Corporation: Doing Business Without License. Since the facts of the case of Mergenthaler Linotype Company v. Hays, 181 S. W. 1183, are the same in all material substance as those of United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, the decision of the Court of Appeals holding that said Linotype Company was not doing business in this State within the meaning of the statute (Secs. 3037, 3039 and 3040, R. S. 1909) must be quashed.

3. ———: ———: ———: ———: Office in State. The fact that in the Ramlose case the United Shoe Machinery Company maintained an office in this State, while in the Mergenthaler case the Linotype Company had no such office, does not distinguish the cases, for the reason that the statute itself requires an office to be maintained, and no difference in favor of the Linotype Company can be bottomed on its failure to comply with the statute.

4. ———: ———: ———: ———: Warehouse. In the Ramlose case only repair parts and pieces for use upon the leased machines were kept in the company's Missouri warehouse, but its business was not that of selling repairs, but of leasing machines. In the Mergenthaler case $600,000 worth of linotype machines were moved bodily into this State and leased out at an annual rental far in excess of what their selling price would seem to warrant. *Held*, that the fact that the Linotype Company had no warehouse did not distinguish the cases, but if there is any difference the facts of the Mergenthaler case are stronger than those of the Ramlose case.

5. **FOREIGN CORPORATION: Leasing Machines and Collecting Rents: No License.** No foreign corporation can through a period of ten years engage in this State in the business of renting out its property at an annual rental reserved, and of collecting rent yearly throughout rental periods of six years, without taking out a license to do business in this State. Such dealing is not buying and selling; it is not traffic; it is dealing with the property after the interstate commerce character of the shipment has ceased.

6. ———: ———: Conflict in Decisions: Royalty or Lump Sum. The fact that in the Ramlose case the foreign corporation collected the rental on its leased machines in the shape of one cent royalty on each pair of shoes manufactured does not distinguish it from the Mergenthaler case wherein the Linotype Company collected $632.50 per annum as rental for each machine leased. Both are in effect rent charges. .

7. ———: ———: ———: Agents: Interstate Commerce. The fact that the foreign corporation had resident agents in this State did not make its business of moving a large number of machines into this State, renting them for a long number of years at an annual rental, collecting the rents, and taking back the machines at the end of the rent period, interstate commerce. Agents are necessary instrumentalities of extensive intrastate or interstate commerce, and in no wise distinguishes the one from the other.

8. ———: Burden of Proof. The burden of proof is on the defendant to show that the plaintiff, a foreign corporation, is engaged in doing business in this State without a license.

9. ———: Proof of Contract: Admitted by Answer. A holding of the Court of Appeals that the defendant is not in a position to raise the point that he did not execute the contract sued on, because his answer clearly admits the contract, is not in conflict with prior rulings of the Supreme Court.

*Certiorari.*

JUDGMENT QUASHED.

*Sheppard & Sheppard, Leslie C. Green* and *Ernest A. Green* for relator.

(1) The respondents, in their opinions filed in the case of Mergenthaler Linotype Company v. Hays, held, as a matter of law, that there was no evidence of the transaction of business by the plaintiff, Mergenthaler Linotype Company, in this State; in so holding, the decision was in direct conflict with three controlling decisions of the Supreme Court. Linotype Co. v. Hays, 181 S. W. 1183; Linotype Co. v. Hays, 182 Mo. App. 113; Machinery Co. v. Ramlose, 210 Mo. 631; Machinery Co. v. Ramlose, 231 Mo. 508; Kansas City v. McDonald, 175 S. W. 917. (2) The opinions of the respondents are also in direct conflict with certain other

decisions of the Supreme Court, and of other courts of appeals, in holding that the answer filed by the defendant in said case in the circuit court admitted the execution of the contract of lease sued upon. Linotype Co. v. Hays, 181 S. W. 1183; Ruckman v. Milling Co., 139 Mo. App. 256; Kelley v. Thuey, 143 Mo. 436; Bldg. & Loan Assn. v. Obert, 169 Mo. 518; Campbell v. Wolf, 33 Mo. 459; Bowling v. Hax, 55 Mo. 446.

*David W. Hill* for respondents.

(1) The lease in suit was executed on the 12th day of May, 1910, and the plaintiff at no time had an office in Missouri, and not doing business in this State until about the first day of January, 1913, and up to that time was transacting business through traveling salesmen, which is permissible, according to the last proviso of Sec. 3040, R. S. 1909. (2) The facts of this case on the second appeal being substantially the same as they were on the first appeal, the law of this case was settled by the Springfield Court of Appeals on the first appeal, by the opinion written by Judge Farrington, and among the many cases cited by the Springfield Court of Appeals, on the first appeal, are two of the cases which are referred to as controlling decisions of the Supreme Court, to-wit: United Shoe Machinery Co. v. Ramlose, 231 Mo. 508; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631. In that opinion the Springfield Court of Appeals distinguishes the facts in the case last above mentioned from the facts in the case at bar. Linotype Co. v. Hays, 182 Mo. App. 113. (3) The most casual comparison of the facts in the case at bar with the facts in the cases cited by relator as controlling cases of the Supreme Court will convince this court that there is no conflict whatever. Furthermore, the two decisions of the Springfield Court of Appeals should be read together, and as they distinguish the facts of the case at bar from the facts stated in the decisions which relator says control, for those reasons, the writ of *certiorari* should be quashed. State ex rel. v.

Ellison, 263 Mo. 509. (4) The court will bear in mind that no writ of *certiorari* was sued out as to the first decision of the Springfield Court of Appeals, but was only sued out after the case was decided a second time by the Springfield Court of Appeals. The first decision settled the law of the case, was not in conflict with any decision of the Supreme Court, and under the doctrine of *stare decisis* the Court of Appeals was bound to follow its decision. Cape Girardeau & T. B. T. R. Co. v. Bridge Co., 215 Mo. 286.

FARIS, J.—This is an original proceeding by *certiorari* to bring up to this court the record of the Springfield Court of Appeals in the case of Mergenthaler Linotype Co. v. Hays, 181 S. W. 1183. Two opinions have been written in the case by the learned Springfield Court of Appeals. [182 Mo. App. 113.] In the opinion last rendered but first above cited, references are made to the first opinion for many of the facts and for much of the law.

It is urged by relator as his ground for quashal, that the opinion of the Court of Appeals is in conflict with the case of United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, and of other cases of similar import. The point upon which the case turns is what constitutes the *transaction* by a foreign corporation of *business in this State* within the purview of sections 3037, 3039 and 3040, Revised Statutes 1909.

The facts in the Ramlose case which we held constituted the transaction of business in this State are thus stated in the reported case:

"Said company, accordingly, about December 18, 1900, and from time to time thereafter, leased certain machines to the defendant, including those he had formerly owned or claimed he owned. The leases contained various conditions, among which were: (1) That the machines should be used by him only in his factory in St. Louis; (2) that he should obtain from the lessor, at prices to be fixed by it, all parts necessary to keep the machines in repair, and also any additional machinery

needed; (3) that he should pay all taxes levied on the
machines; (4) that he should use the machines to their
full capacity; (5) that he should pay the lessor a royalty
of one cent a pair for all shoes manufactured, with a
rebate allowance of fifty per cent if the royalty was paid
by the 15th of the succeeding month; (6) that the lessor
should have the right to attach indicators to the ma-
chines to register the number of shoes manufactured,
and that the lessee should keep accurate accounts of the
number of shoes manufactured; (7) that if he ceased to
use exclusively the machines leased to him by the com-
pany, it should have a right to take possession thereof;
(8) that the lease should run seventeen years, but that
the lessor should have the right to terminate it for any
breach thereof or for any failure of the lessee to observe
any one or more of the conditions of such lease or of
any of the leases; (9) that a notice in writing sent
through the mails should be sufficient to terminate such
leases; (10) that the lessee acknowledged the validity of
the lessor's patents; (11) that no act of the lessor should
waive any of the terms of the lease, unless by instru-
ment of writing signed by its president, vice-president
or treasurer; (12) that the term 'lessor' should include
the company, its successors and assigns."

The facts in the instant case as shown by the proof
below which the learned Springfield Court of Appeals
excerpts and briefs for us run thus:

"We will briefly set forth the evidence as shown by
this record. The plaintiff had in its employ a traveling
salesman or solicitor whose duties required him to visit
prospective customers in this State and induce them to
enter into either contracts of purchase or contracts of
lease. This salesman was working on a salary paid by
the plaintiff and traveled in Missouri at the time this
contract was made. In May, 1910, he induced the de-
fendant Hays to enter into the contract of lease in ques-
tion. It was signed by defendants (Hays and Davis) in
Missouri, but was not to become a binding contract un-
til accepted by the proper officers of the plaintiff in the
State of New York. It was forwarded to New York and

by the plaintiff accepted, and under its terms a linotype machine was delivered to the defendants in the city of New York. The rent, under the terms of the lease, was payable to the plaintiff in the State of New York. The evidence shows that during the first four months of the year 1910 the plaintiff entered into eleven separate and distinct contracts in this State and leased twenty-seven separate linotype machines to customers in Missouri, and these machines were all installed during the first four months of the year 1910. It further shows that between December, 1895, and January, 1910, the plaintiff leased about three hundred machines in this State, all of which were installed under substantially the same kind of a contract as the one sued on in this case. The evidence shows that the contract of lease in suit provides that the plaintiff would furnish a machinist to erect the machine, at the instance of the lessees. Also that in many cases the plaintiff had sent its machinists into this State to erect and install its machines, and that these machinists were in the employ of the plaintiff and were paid a salary by plaintiff. There is evidence that plaintiff also had in its employ operators of linotype machines who were to instruct the lessees how to operate the machine. It is shown that on May 12, 1910, the date of the contract of lease in suit, plaintiff had in force in this State forty-five other contracts similar to this one, and had forty-five other machines installed in Missouri, and that whenever requested plaintiff sent its machinists into this State to make repairs. It is also shown that in 1913, some three years after this contract was made, plaintiff procured a license to transact business in this State, one of the witnesses saying this was done to conform to the laws of Missouri. The plaintiff, during the ten years prior to the making of this contract, had machines installed in this State the total value of which was approximately $600,000. . . .

"Clause 4 of the lease provides that the plaintiff will furnish, at the expense of the lessees, a competent machinist to erect the machine at the place of business of the lessees and a skilled operator to instruct the les-

sees in its use. Clause 7 provides that the lessees will maintain the machine and its belongings in good condition and that they will at their own expense at once replace and repair all parts of the machine that become broken or damaged. The lease also provides that the lessor may inspect the machine at any time during the term of the lease, and the evidence disclosed that plaintiff did have in its employ inspectors who would go over the State inspecting its machines at least once every year.

"The evidence, we think, fails (under the authorities cited in our former opinion and again cited in appellant's brief now before us) to show that the acts of the plaintiff in making this lease and in performing the terms thereof subsequent to its execution digressed from carrying on business classified as interstate commerce, and wholly fails to evidence any fact showing that plaintiff had undertaken to carry on any local business, or intrastate commerce, in the State of Missouri."

The contract made between the Mergenthaler Linotype Company and Hays and Davis is not set out in the last opinion of the Court of Appeals, but reference is made therein to the first opinion for the contents and provisions thereof. . [182 Mo. App. 113.]

I. Upon these facts the Court of Appeals ruled that the Mergenthaler Linotype Company was not when it made the contract with Hays and Davis on the 12th day of May, 1910, transacting business in Missouri. If this decision be opposed to what we said, or

Conflict of Decision. the conclusion which we reached upon similar facts (if the facts are similar) in the Ramlose case, we ought to quash the judgment of the Court of Appeals. That is the sole question to be determined.

When the matters and things transpired out of which the action between the Mergenthaler Linotype Company and Hays and Davis grew, i. e., when the contract of lease between the above parties was entered into, section 3037, supra, had been construed as to divers phases and upon divers facts by this court. [Roeder v.

271 Mo.—31

Robertson, 202 Mo. 522; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631.] It is true that in neither one of these cases do we specifically and categorically set forth what facts and all of the facts which must be shown in order to constitute a transacting of business in this State within the purview of said section 3037. In the Roeder case the fact that the corporation from which the right which it was sought to enforce emanated, was doing business in this State contrary to the above section, was conceded by the facts agreed on. But if it be found that the facts set out in the Ramlose case are so far similar to the facts found by the learned Springfield Court of Appeals as that the same rule of law should be applied in both cases, then of course we must quash a judgment which upon similar facts announces a different rule of law. Comparing the facts shown respectively in the two cases they run thus:

In the Ramlose case the articles, to-wit, patented shoe making machines, (a) were leased by the United Shoe Machinery Company to Ramlose for seventeen years; in the Mergenthaler case the article, to-wit, a linotype or type-casting machine was leased to Hays and Davis for six years; (b) in the Ramlose case the rent reserved (called therein royalty) was one cent per pair on each pair of shoes made by the lessee; in the Mergenthaler case the rent was $632.50 in cash per year, payable in advance; (c) the leased machines in both cases were to be used only in the respective places of business of the lessees; (d) all pieces or parts necessary to replace broken or worn parts were in both cases to be bought from the lessors respectively, at prices fixed by the latter; (e) lessees in both cases were to pay all taxes levied upon the machines; (f) in the Ramlose case the leased machines were to be operated to their full capacity; in the Mergenthaler case it was forbidden to operate the machine more than sixteen hours per day; (g) in the Ramlose case the lessor had an agent and a place of business in this State; in the Mergenthaler case lessor had an agent, but no office or place of business of any kind in this State; (h) in both cases the contracts were

to be performed in Missouri, i. e., the leased machines were to be used in Missouri, and the lease contracts were signed by the lessees in this State and by lessors in the foreign states of their respective domiciles; (i) it does not clearly appear in the Ramlose case how much business had been done by the lessor prior to the execution of the lease contract there in question; in the Mergenthaler case lessor had been engaged in the business of leasing type-casting machines for ten years before the lease-contract in question was made and had installed in this State under similar contracts machines of the aggregate value of approximately $600,000; (j) in the Mergenthaler case skilled machinists, operators and inspectors were kept constantly in the employ and pay of lessors for work in this State, but when services were rendered by the machinists and operators in erecting, or in giving instructions as to the operation of the leased machines such services were charged to, and were to be paid by the lessees; it does not clearly appear that such was the case in the Ramlose case, except that upon a dispute arising as to the quantity of shoes made on which royalty, or rent, should be charged, the lessor insisted in naming the operators who should be hired by lessee; (k) in the Mergenthaler case there was given under the most stringest conditions as to time and notice of the exercise thereof, an option to purchase the leased machine after one year; in the Ramlose case there was no such option; (l) in the Mergenthaler case the machine was to be returned to lessor at the termination of the six-year rental period; in the Ramlose case no such provision seems to be mentioned; (m) in the Mergenthaler case the machine was to be insured by the lessor, but the lessees were to pay the premiums; in the Ramlose case there was no such agreement; (n) in the Mergenthaler case access to the machine by the agents of lessor at all reasonable times was reserved, and a waiver of landlord's lien for rent was required; there was no such agreement in the Ramlose case; and (o) both contracts provided in substance that the machines should re-

main the exclusive property of the lessor, and lessees should have no property right or title in them.

Under these facts, conceded, as this court found them to be, it was held in the Ramlose case that the United Shoe Machinery Company was transacting business in this State. Was the Mergenthaler Linotype Company doing the like when it made the contract with Hays and Davis three years before it took out a license to do business in this State as a foreign corporation? We think this question must be answered in the affirmative.

In some aspects the Mergenthaler case is far stronger in favor of this view than is the Ramlose case. The chief point of difference is that the Mergenthaler Company had neither an office nor a warehouse in this State. Whatever argument there may be in the fact of the maintenance of a warehouse by one and not by the other, there is no virtue in the argument of a difference based on the maintenance of an office. This for the reason that the statute itself requires that an office be maintained. Surely, no difference in favor of the Mergenthaler Company can be bottomed on its failure even to partially comply with the statute in question. As to the matter of the warehouse, it may be said that by the plainest inference repair parts and pieces only were kept in such warehouse for use upon the leased machines of the Shoe Machinery Company. Here in the Mergenthaler case $600,000 worth of personal property, to-wit, type-casting machines, belonging to the latter company, were moved bodily into this State and leased out at an annual rental far in excess of that which the selling price of the machine would seem to warrant. In the one case mere repair parts and pieces were moved into the State; in the other some hundreds of type-casting machines were so moved. Moreover, the business of the United Shoe Machinery Company was not that of selling repair parts; it was that of leasing shoe-making machinery; one was merely a convenient incident to the other, its chief business.

While fully recognizing that the burden of proof was upon defendants in the case of Mergenthaler Linotype Co. v. Hays et al., to show that the plaintiff in that case could not recover for that, being a foreign corporation, it was engaged in doing business in this State without having theretofore complied with the law; yet when it was shown that this company had moved into this State prior to the making of the contract here under discussion more than a half million dollars worth of its property, which it was leasing out under contracts, we are warranted, naught else appearing, in assuming that such transactions were merely part and parcel of its usual and ordinary business. In other words, that this business done by it in this State differed in no material respect from its usual and ordinary business and from its usual and ordinary method of doing that business in the State of its domicile and in other states.

We are of opinion that any foreign corporation, without taking out a license in Missouri under sections 3037, 3039, 3040 and 3342, Revised Statutes 1909, can under the commerce clause of the Federal Constitution, unhindered wholly by us or by the laws of this State, sell its type-casting machines or other commodities to citizens of this State under such terms as it sees fit (Kansas City v. McDonald, 175 S. W. 917; Wulfing v. Cork Co., 250 Mo. l. c. 731), that it can likewise sell repair parts to purchasers of its products or machines, and agree to send its skilled workmen and operatives into this State, at the expense of the users of its machines, to erect the same and teach the manner of the operation thereof. [Milan Milling Co. v. Gorten, 93 Tenn. 590; Flint & Walling Mfg. Co. v. McDonald, 21 S. D. 526.] But we do not think that any foreign corporation can through a period of ten years engage in this State in the business of renting out its property at an annual rent reserved, and of collecting that rent yearly throughout rental periods of six years, without complying with our statutes licensing foreign corporations. We need not lengthen these views by a recital of the reasons for requiring a foreign corporation to maintain an office and

obtain a license before permitting such corporation to transact intrastate business in this State. The statute itself which so requires furnishes a sufficient reason for us. But the courts have collated some of these reasons wherein the curious may read them: Vide, Roeder v. Robertson, 202 Mo. 522; Osborne v. Shilling, 74 Kan. 675.

Neither does it make any difference as between the facts in the Mergenthaler case and those in the Ramlose case, that in one a royalty in lieu of fixed rent was taken as compensation for the use of the machine, rather than a certain fixed cash sum payable annually in advance. Both are in effect rent-charges; both are doing business, though getting cash rent in advance may seem to be doing the better business. Interstate commerce, as to the particular phase confronting us, connotes trafficking transactions between citizens of different States, whereby the title of the seller in the commodity sold is transferred to the buyer, or agreed so to be upon the contingency of payment of the purchase price by instalments or otherwise. [Kansas City v. McDonald, 175 S. W. 917.] Not one wherein the property of the quasi-seller is moved bodily into this State and leased for a long term of years for an exorbitant annual rental and to be returned to such seller at the end of the rental period.

The fact that in both cases the companies charged with transacting business in this State had resident agents here, proves nothing. Agents, like transportation companies, are mere instumentalities of commerce. Each is a necessity of commerce common to both intrastate and interstate commerce, and so factors which in nowise differentiate the one sort of commerce from the other. In interstate commerce the delivery of the commodity to the purchasing citizen of another State may be either in the domicile of the vendor or of that of the vendee; it may be for cash, or on time, by giving credit and taking back security, by payment in full or by instalments, but if the title to the commodity does not pass, and is not to pass, certainly the business is not traffic; it is not buying and selling. It is but the bringing of the property of the

foreign corporation into this State and so dealing therewith after it is in the State as to make of such property a source of income to the foreign corporation. In short, it is a continued dealing by the foreign company with the property in this State *after interstate commerce has wholly ceased its dealings therewith.* If such acts do not constitute transacting business in this State it is difficult to conceive what would be necessary in order for a foreign corporation to transact business here. Nor does the fact that a studied effort to give to the transactions a false color of interstate commerce, in any way change this view.

Concerning the further point urged by relator that there is no proof in the record that he executed the contract of lease, it suffices to say that this point is so answered by the learned Court of Appeals as to leave nothing further for us to say about it. They rule that relator "is in no position to raise this point, as his answer in this case clearly admits the contract of lease and the trial court was justified in finding that he signed it." This is unquestionably good law.

We are of the opinion upon the other point, however, that the judgment of the Springfield Court of Appeals is in conflict with the case of United Shoe Machinery Co. v. Ramlose, supra, and that the judgment rendered by that court on the 8th day of January, 1916, in the case of Mergenthaler Linotype Co. v. Hays et al., should be quashed and for naught held. Let this be done. All concur, except *Bond, J.,* who dissents.