## ALEXANDER FILM CO. v. LAZERES & MORFESY. (No. 2149.)

Court of Civil Appeals of Texas. El Paso. May 17, 1928.

On Appellant's Motion for Rehearing May 31, 1928. Appellee's Rehearing Denied May 31, 1928.

1. **Commerce** ⬤➡46—**Transaction whereby goods were shipped into state held one of interstate commerce.**

Transaction whereby foreign corporation, having no resident agent in state, shipped films into the state on rental contract solicited by a commission salesman, and providing that it should not be binding on the corporation till countersigned, as it thereafter was, by an official in the corporation's state, is one in interstate commerce.

On Motion for Rehearing.

2. **Corporations** ⬤➡661(2)—**Foreign corporation, though doing business in state without complying with its laws, may sue for rental of goods sent in by interstate commerce transaction.**

Transaction whereby goods were shipped into state by foreign corporation on rental contract being one in interstate commerce, corporation, even though doing business in the state without complying with its laws, in that respect, may maintain action in the state for the rental.

Appeal from El Paso County Court at Law; J. M. Deaver, Judge.

Action by the Alexander Film Company against Lazeres & Morfesy. From an adverse judgment, plaintiff appeals. Reversed and rendered.

R. A. D. Morton and Jno. M. Worrell, both of El Paso, for appellant.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellee.

WALTHALL, J. This suit was brought in the justice of the peace court by Alexander Film Company, a foreign corporation, against Max S. Lazeres and Ralph Morfesy, a partnership, doing business under the firm name of Lazeres & Morfesy, to recover on a contract in writing the sum of $165. Final judgment was rendered in the justice court and an appeal duly prosecuted to the El Paso county court at law, and there tried de novo, without a jury.

The trial court entered judgment denying recovery, to which appellant excepted. The Alexander Film Company filed its motion for a new trial, which was overruled, and to which ruling appellant duly excepted and has perfected this appeal.

There is no statement of facts in the record, but the trial court filed findings of facts and conclusions of law as follows:

"I find that the Alexander Film Company is a corporation duly incorporated and doing business in the state of Colorado, with its main and principal office in Denver of said state.

"I also find that said corporation has never obtained from the secretary of the state of Texas a permit to do business in the state of Texas; that it does not now, nor did at the time herein mentioned, have a resident agent in the state of Texas; I find that the defendant is a partnership composed of M. S. Lazeres and Ralph Morfesy. I find that on the 17th day of March, 1926, the plaintiff and defendant herein entered into the following contract:

"'Form 17. Double Theater, De Luxe. Alexander Film Co. All over the U. S. A. Main office: Denver, Colo. A division of Alexander Industries Inc. Publicity Film Rental Subscription. Every 2 Weeks Service.

"'The advertiser rents from the Alexander Film Company, a division of Alexander Industries, Inc., a series of advertising films for a continuous period of twelve (12) months from the first shipping date at a rental charge of fifteen ($15.00) per month, payable monthly in advance and agrees to pay for screening these films on a separate agreement with the theater.

"'The film company will ship films prepaid to the Palace and Unique Theaters of El Paso, Texas, or any other place the advertiser may desire, at the rate of one film every two weeks, provided each film is returned at the end of its screening period which is 2 weeks.

"'The advertiser will accept additional rental service, free in compensation for any film company defaults. No verbal statements additional to or modifying the terms of this subscription are to be valid. This subscription shall not be binding upon the film company until countersigned by an official of Alexander Industries, Inc.

"'The Film Company has received $35.00 for which it will produce one From Hunt full screen trailers (or less) with all of the necessary prints of same, to be used with this publicity service.

"'If any payment shall be delinquent for more than one month, all remaining installments hereunder become due and payable and the advertiser hereby agrees to pay collection costs, including reasonable attorney fees. Delinquent payments shall draw the legal rate of interest. The film company may, in case of delinquency of payments, suspend service until such payments are made. Make all checks payable to the Alexander Film.

"'It is agreed that this includes $2.00 for subscription to the Alexander Cooperator for one year. Date 3/17/1926. Lazeres & Morfesy, per R. Morfesy, Advertiser. Alexander Film Co., by A. M. Smith. Countersigned: Alexander Industries, Inc., by V. J. S. ———, Address.

"'(Mail both copies to Denver for countersigning.)'

"On reverse side of contract:

"'To Subscribers.

"'In order that full benefits may be received from this, movie playlet rental service, subscribers are advised to watch carefully the

screening of same, and to notify theater manager of any irregularity. Also see that all films are returned promptly parcel post, by the theater, at the end of their rental periods. Otherwise shipments cannot be made according to schedule.

" 'Movie playlets are syndicated films designated to advertise the business and service of our many customers. The wording of action cannot be changed from that shown in the catalog. Trailer copy cannot be altered, except by purchase of a new trailer. Individuality is brought out in the special trailer which follows the movie playlet. The same copy is used for trailers throughout the subscription unless additional trailers are ordered at regular rates. In case suitable copy is not furnished by advertiser at time of signing subscription, the film company may design same according to its best judgment. Trailers are not produced until payment is received.

" 'Extras.

" 'Wordage beyond 10 words may be furnished at the rate of $1.00 per foot (figure one word to a foot).

" 'The above extras are for production and are to be paid at time of signing subscription.

" 'Received April 28, 1926.'

"I find that the contract was signed by the plaintiff and the defendant in El Paso, Tex., and that one Smith signed on behalf of the plaintiff, and that said Smith was employed by the plaintiff as a specialty salesman working on a straight commission basis. I find that the contract provided that it should not be binding until countersigned by an official of Alexander Film Company at the home office, in Denver, Colo., which was accordingly done in this instance.

"I find that there was paid $35 for a screen trailer on said contract and $15 paid on October 18, 1926.

"I find that between May 8, 1926, and March 12, 1927, that plaintiff shipped 23 films to the Palace and Wigwam theaters, in El Paso, Tex., and that it has not furnished any other films under this contract because defendant was in arrears in their payments. I find that plaintiff is ready and willing to ship the remainder of the films if defendant will pay this bill. I find that the films were shipped direct to the theaters mentioned in El Paso, Tex., by them received, by them displayed, and by them returned to the plaintiff at Denver, Colo.; I find $165, the amount sued upon, is correct amount.

"And I find that plaintiff had a separate and distinct contract with the Palace and Wigwam Theaters in El Paso, Tex.

"Conclusions of Law.

"From the above facts I conclude that the performance of the contract between plaintiff and defendant was necessarily to be had in Texas; and I also conclude that the performance of the contract in Texas necessarily required the transaction of business in this state, and render judgment accordingly."

The one issue to be determined is whether the facts found by the trial court show a transaction in interstate commerce. If they do the trial court was in error in rendering judgment denying recovery. The suit here

by appellant is to recover from appellees, in the contract called the advertisers, the unpaid balance of the contract price or rents of a series of advertising films for a continuous period of twelve months at an agreed rental charge. The specific terms of the contract we need not state, as no question is raised as to a full compliance by appellant with its terms.

Appellant is a foreign corporation doing business in the state of Colorado, having its principal office at Denver, in that state. It had no resident agent in this state. The contract was signed in El Paso, Tex., by appellees and by one A. M. Smith, on behalf of appellant, a special salesman, employed by appellant working for appellant on a straight commission basis, the contract providing that it should not be binding upon appellant until countersigned by an official of Alexander Industries, Inc., in Denver, Colo., of which appellant is a division, and which countersigning was done, as stipulated, in the contract. The films were shipped direct to the theaters mentioned, in El Paso, Tex., and by them received, displayed, and returned to Denver, Colo.; the amount of $165 was the unpaid amount owing. Appellant had not filed with the secretary of state a copy of its articles of incorporation and had not obtained from the secretary of state a permit to do business in the state of Texas, as provided by Articles 1529 and 1536, R. C. S. 1925.

Opinion.

[1] The only question presented is: Do the facts show that the transaction was one in interstate commerce, rendering it unnecessary on the part of appellant to plead and prove the filing of its articles of incorporation and obtaining a permit to do business in this state as required by our statutes?

We have concluded that the transaction, evidenced by the contract and the facts found, was one in interstate commerce. That view is sustained, we think, by the following authorities; Real Silk Hosiery Mills, Inc., v. City of Portland, 268 U. S. 325, 45 S. Ct. 525, 69 L. Ed. 982; F. L. Shaw Co. v. Dalton Adding Machine Co. (Tex. Civ. App.) 211 S. W. 833; Southern Discount Co. v. Rose (Tex. Com. App.) 296 S. W. 483; Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Falls Rubber Co. v. La Fon (Tex. Com. App.) 256 S. W. 577; Southwest General Electric Co. v. Nunn Electric Co. (Tex. Com. App.) 283 S. W. 781; Wilson v. Peace, 38 Tex. Civ. App. 234, 85 S. W. 31; Binderup v. Pathé Exchange, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308.

We will not, however, here render judgment in favor of appellant, because of the last finding of fact by the trial court with reference to separate and distinct contracts with the Palace and Wigwam Theaters in El Paso, Tex. We are wholly unadvised of the nature and effect of those contracts. It may be they show that appellant is doing business in this state.

If they are of the same legal effect as the one between appellant and appellee, then they do not show the transaction of business in this state and do not preclude the appellant's right to recover of appellee.

Reversed and remanded.

### On Appellant's Motion for Rehearing.

[2] In appellant's motion for rehearing our attention is called to the case of Texas & Pacific Railway Co. v. Davis, 93 Tex. 378, 389, 55 S. W. 562, 564, in which the Supreme Court of this state, in construing our statute on contracts growing out of interstate commerce, remarks that:

"We do not doubt that the shipment of the cattle was an interstate shipment and that therefore the contract was a lawful one, although the corporation may have been doing business in the state contrary to its laws."

The last clause in the above quotation seems to settle the only question on which we were in doubt.

The motion is sustained, and the case is reversed, and judgment is here rendered for appellant for the amount of its debt for which it sues.