FILMAKERS RELEASING ORGANIZA-
TION, a corporation, (Plain-
tiff) Respondent,

v.

REALART PICTURES OF ST. LOUIS, INC.,
a Corporation, George Phillips and Herman
Gorelick, Individuals, (Defendants) Appel-
lants.

No. 31192.

St. Louis Court of Appeals.

Missouri.

Jan. 21, 1964.

Shifrin, Treiman, Agatstein & Schermer, Sylvan Agatstein, St. Louis, for appellants.

Morris J. Levin and S. Sheldon Weinhaus, St. Louis, for respondent.

RUDDY, Presiding Judge.

This suit was instituted by plaintiff, a California corporation, against Realart Pictures of St. Louis, Inc., a corporation, George Phillips and Herman Gorelick, individuals, to recover the sum of $1758.36 due plaintiff by virtue of the terms of a franchise agreement between plaintiff and defendants. The cause was tried by the court without a jury on a stipulation titled "Stipulation of Facts and Submission of Questions of Law."

The trial court found in favor of plaintiff and entered judgment accordingly. Defendants appealed from the judgment entered.

The sole issue presented, as set out in the "Stipulation of Facts and Submission of Questions of Law," is as follows:

"The sole issue in dispute is whether by reason of the contract entered into between plaintiff and defendants, the plaintiff, a foreign corporation, was required to register as a foreign corporation with the office of the Secretary of State of the State of Missouri and obtain a license to do business in the State of Missouri, and it not having so qualified, is prohibited from maintaining this action pursuant to Section 351.635, Revised Statutes Missouri 1949."

Put more succinctly, the question before us is whether plaintiff, a foreign corporation, is "doing business" in this state so as to require it to qualify with the Secretary of State.

The parties in their Stipulation of Facts and Submission of Questions of Law agreed in the trial court that the following are the facts in this case. We summarize the facts so stipulated.

Plaintiff is a corporation organized under the laws of the State of California and is engaged in the business of distributing in interstate commerce throughout the United States motion pictures which it owns, and its method of doing business is to contract for a specifically defined territory, covering a multi-state area, for the exclusive distribution of its motion pictures, in consideration of which the other party to the agreement agrees to pay plaintiff for each picture so distributed an agreed specified share of the gross proceeds taken in at the showings of each motion picture referred to and covered by the contract between the parties, with guaranteed minimum.

It was further stipulated that defendant Realart Pictures of St. Louis, Inc., is a Missouri corporation and that the individual defendants are the principal officers, directors and stockholders of said corporate defendant and control said corporation's activities.

On or about December 1, 1953, the plaintiff and defendants entered into a written contract, a copy of which was attached to the stipulation and incorporated therein by reference. Thereafter, the guaranteed minimum, as set out in said agreement, was amended and modified on May 5, 1954 by a supplemental agreement which was attached to the stipulation and incorporated therein by reference.

It was further agreed that a deficiency existed in the guaranteed minimum as provided by said agreement, in the amount of $1758.36 for two motion pictures de-livered and that said amount with interest thereon was and is due and owing to plaintiff by the defendants. It was further stipulated that plaintiff maintains its principal and only office in California and that its officers and stockholders reside in that state and that it has no office for the transaction of business in the State of Missouri; that all transactions between plaintiff and defendants pursuant to the agreements were conducted by mail.

It was further stipulated that plaintiff exercised no control over any of the defendants' employees, did not hire or discharge any of them, nor did it determine their wages, hours or other terms or conditions of their employment, and that plaintiff has never paid salaries to anyone in the State of Missouri.

It was stipulated that plaintiff has not registered as a foreign corporation with the Office of the Secretary of State of the State of Missouri so as to qualify it to do business in the State of Missouri.

Defendants contend that in addition to the facts contained in the stipulation we should consider various articles of the franchise agreement which they deem material as describing the acts performed by the parties and the relationship between them. Some of the provisions of the franchise agreement which they contend should be given consideration we summarize as follows:

The provision that Realart must at all times keep Filmakers advised of the exact whereabouts and location of all prints.

The provision that forbids Realart from changing or revising or altering any of the prints without Filmakers' consent.

The provision that makes it a ground for cancellation in the event that the personnel of Realart shall be changed.

The provision that relates to the method of compensation of Filmakers

538

by Realart and provides in paragraph (D) that collection of fees from exhibitors shall be a trust fund to be shared by Filmakers and Realart.

The provision that provides in its last paragraph that the name of Filmakers shall be conspicuously displayed on Realart's building, office window or door so long as the agreement shall be in effect.

The provision that the motion pictures shall be distributed, exhibited and exploited as a release of Filmakers whose name shall be conspicuously mentioned by the franchise holder.

As pointed out by plaintiff, there is nothing in the stipulation of facts to show that the contractual obligations contained in the franchise agreement and described above, calling for affirmative acts on the part of the parties, were ever performed under the contract and were ever exercised or executed by defendants. There was no evidence before the trial court in the stipulation of facts to show that plaintiff required Realart to advise it of the exact whereabouts and location of all prints, or that the provision with reference to the changing and revising or altering of any of the prints without plaintiff's consent was ever enforced, or that the provision for cancellation in the event that the personnel of Realart shall be changed was ever enforced, or that moneys collected by defendants were ever held in trust or put in any trust fund, or that defendants conspicuously displayed plaintiff's name on its building, office window or door or that plaintiff's name was conspicuously mentioned in the distribution, exhibition and exploitation of motion pictures. True it is that these were contractual obligations to be performed under the franchise agreement but there was no evidence before the trial court to show that they resulted in acts actually performed.

In determining whether a foreign corporation is "doing business in" the State of Missouri, we are more concerned with what was done actually under a contract.

What it "could have done" is not sufficient to establish "doing business in" the State of Missouri.

In the case of Hogan v. City of St. Louis, 176 Mo. 149, 75 S.W. 604, petitioner contended that at the time the contract was entered into between the City of St. Louis and the Kern Company, a foreign corporation, that the corporation had not complied with the statutory requirements of this state prerequisite to its admission into the state with authority to do business here. In other words, petitioner contended that the foreign corporation had not complied with the statutes, one of which was a predecessor statute of § 351.635 RSMo 1959, 17 V.A.M.S., wherein it is provided that every foreign corporation doing business in this state which shall fail to comply with the requirements set out in the statute for doing business in this state shall subject the corporation to a fine and in addition to such penalty provides that, "no foreign corporation, failing to comply with this chapter, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of the contract or tort, while the requirements of this chapter have not been complied with."

In the Hogan case the Kern Company apparently had not performed under the contract at the time the suit was filed. In its opinion the Supreme Court said:

"Entering into a contract like the one in question undoubtedly is 'transacting business,' within the unlimited meaning of the term, but that is not the sense in which the term is used in the statute just quoted. As there used, it means carrying on the work for which the corporation was organized, and, in its application to the facts of this case, it means performing the work called for by the contract." (75 S.W. l. c. 605.)

While in the earlier statute the term "transacting business" was used, whereas today the successor statute uses the term "doing business in," we see no real difference in meaning.

The Supreme Court of the United States in the case of Ozark Pipe Line Corporation v. Monier et al., 266 U.S. 555, 45 S.Ct. 184, 69 L.Ed. 439, when considering the powers of a foreign corporation in Missouri to do a local business, said:

"Some stress is laid upon the fact that the objects and purposes specified in appellant's articles of incorporation are not confined to the transportation of petroleum but include the doing of other business local in character. As to this, it is enough to say that none of these powers were in fact exercised in the State of Missouri; and so far as this case is concerned the power to tax depends upon what was done and not upon what might have been done." (266 U.S. 1. c. 566, 45 S.Ct. 1. c. 187, 69 L.Ed. 439.)

Therefore, the contractual obligations which defendants urge us to consider and for which there is no evidence that they were ever performed under the contract cannot be considered by us in determining whether or not plaintiff was "doing business in" the State of Missouri.

Additional provisions of the franchise agreement for which defendants urge consideration are those that provide that title in and to all prints of motion pictures shall remain vested in Filmakers and Realart shall have no right, title or interest therein; that the obligation and covenants of the franchise agreement are personal with Realart and the agreement cannot be transferred, assigned or otherwise disposed of; that all contracts for the exhibition of the motion pictures shall be entered into in the name of Filmakers on forms furnished or approved in writing by it; and that no contract for the exhibition of films shall be valid unless and until it is approved in writing by a duly authorized officer of Filmakers. We think these provisions may be considered in connection with the Stipulation of Facts.

■ The burden of proof is on the defendants to establish that the plaintiff was doing business in this state. Superior Concrete Accessories v. Kemper, Mo., 284 S.W. 2d 482; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, 109 S.W. 567; State ex rel. Hays v. Robertson et al., 271 Mo. 475, 196 S.W. 1132.

Plaintiff and defendants cite many cases in support of their respective contentions. Plaintiff contends it was not doing business in Missouri and, therefore, was not subject to the qualification statutes of the state. Defendants take a contrary position.

■ In C. T., the Corporation Journal, Vol. 23, No. 9, pp. 163 et seq., in a very fine article titled "Three Kinds of Doing Business," it is pointed out that the courts have considered three general types of "doing business." The three general types of "doing business" have reference to the particular question before the court, i. e., whether the foreign corporation is subject to the state's taxing jurisdiction, whether it is subject to the process of the court within the state and whether or not it has subjected itself to the regulatory or qualification statutes of the state depend to a greater or less extent on the amount of activity of the corporation within the state. This general statement appearing in the authority cited above seems to be supported by a reading of the numerous cases involving the issue of when a foreign corporation is doing business in a state other than the one in which it is incorporated. This much seems to be clear that the greatest amount of business activity is required to subject a corporation to the state's statutory qualification requirements.

In connection with what we have said, two of the cases relied on by defendants, namely, Wooster v. Trimont Mfg. Co., 356 Mo. 682, 203 S.W.2d 411, and Bach v. Friden Calculating Mach. Co., 6 Cir., 167 F.2d 679, involve the question of whether or not the foreign corporation was amenable to the service of process in the state and, therefore, are of little or no help in determining whether or not plaintiff in this case was

**540**

subject to the qualification statutes of this state.

█ It is difficult and perhaps unwise to attempt a definition of what constitutes doing business that would be applicable in all cases. However, it can be said with certainty that in order to be required to qualify under the qualifying statutes it is necessary that the foreign corporation transact a substantial part of its ordinary business in a state. Normally, isolated transactions are not considered a substantial part of a corporation's ordinary business and a foreign corporation conducting an isolated transaction is not required to qualify. Superior Concrete Accessories v. Kemper, Mo., 284 S.W.2d 482; International Textbook Co. v. Pigg, 217 U.S. 91, 1. c. 105, 30 S.Ct. 481, 1. c. 484, 54 L.Ed. 678. In the Superior Concrete Accessories case the court said: (284 S.W.2d 1. c. 489)

"In Western Outdoor Advertising Co. of Nebraska v. Berbiglia, Inc., Mo.App., 263 S.W.2d 205, 209, it was stated that 'a determinative factor of whether the business [of a foreign corporation] was intrastate in nature was the question of *continued dealing by the foreign corporation with the property after interstate commerce had wholly ceased,* and whether that continued dealing was an isolated transaction or a continuing form of the business of the foreign corporation.'" (Emphasis supplied).

█ Despite the attempts in many cases to define what constitutes doing business, perhaps the most that can be said is that each case must be decided in the light of its own peculiar factual situation. No contention has been made that the account sued on in the instant case was the result of isolated transactions. It would seem that the important question to be decided in the instant case is whether the plaintiff foreign corporation continued to deal with the property (films) after interstate commerce had wholly ceased, that is, after the films were delivered to the defendants.

The test applied by the Federal Courts and by the Supreme Court of our State to determine the character of the transaction is that given in the case of Butler Bros. Shoe Co. v. United States Rubber Co., 10 Cir., 156 F. 1, 1. c. 17, that:

"* * * all interstate commerce is not sales of goods. Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce."

See International Textbook Co. v. Pigg, 217 U.S. 91, 107, 30 S.Ct. 481, 54 L.Ed. 678; Furst (and Thomas) v. Brewster, 282 U.S. 493, 51 S.Ct. 295, 75 L.Ed. 478; Security State Bank v. Simmons, 251 Mo. 2, 157 S. W. 585; Republic Steel Corp. v. Atlas Housewrecking & Lumber Co., 232 Mo.App. 791, 113 S.W.2d 155.

The facts peculiar to the instant case as we find them in the statement of facts and in such portions of the franchise agreement we are permitted to consider, show that plaintiff is engaged in the production and distribution (in interstate commerce) of motion pictures which it owns. It effects the distribution of these pictures throughout the United States through the means of franchise agreements such as the one made between plaintiff and the defendants herein. Defendants as franchise holders were granted the "sole and exclusive franchise, right, license and privilege to distribute, exploit and arrange for the exhibition of motion picture photoplays * * * for theatrical purposes only." The territory granted to defendants was northern Arkansas, small sections of Kentucky, southern Illinois and eastern Missouri. Plaintiff, a corporation organized under the laws of the State of California, was to receive payment for each picture distributed under the franchise agreement and in accordance with the provisions of the contract, which

provisions need not be related here. It may be inferred that the contracts for the exhibition of the motion pictures were entered into in the name of the plaintiff corporation on forms furnished or approved by it pursuant to the terms of the franchise agreement and that all such contracts for the exhibition of films were approved in writing by a duly authorized officer of the plaintiff corporation at its home office in California. These contracts for the exhibition of the motion pictures signed by the exhibitor had to be countersigned by the franchise holder, namely, the defendants herein. Title to all the prints (films) of the motion pictures under contract to the exhibitors was to remain vested in the plaintiff corporation. It is further found from the stipulation of facts that the defendant corporation is a Missouri corporation and that the individual defendants are the principal officers, directors and stockholders of said corporate defendant and control the corporation's activities. It is further found that plaintiff exercised no control over any of the defendants' employees. It did not hire or discharge any of them nor did it. determine their wages, hours or other terms or conditions of their employment and that plaintiff has never paid salaries to anyone in the State of Missouri. The facts further show that plaintiff maintained its principal and only office in California and that it has no office for the transaction of business in the State of Missouri and that all transactions between plaintiff and defendants, pursuant to the agreement, were conducted by mail. We further find that it was agreed between the parties that the amount of $1758.36 with interest thereon was and is due and owing to plaintiff by the defendants. We further find that the defendants cannot transfer, assign or otherwise dispose of their interests in the franchise agreement and that the obligations of said agreement are personal with the defendants.

While it is stipulated that plaintiff is engaged in the production and distribution in interstate commerce of motion pictures, we think there can be no doubt that the transmission of ideas and intelligence through the medium of motion pictures constitutes intercourse between the states and is consequently interstate commerce.

It has been so held by courts of other jurisdictions. Binderup v. Pathe Exchange Incorporated, et al., 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308; General Talking Pictures Corporation v. Shea, 185 Ark. 777, 49 S.W. 2d 359 (talking picture machine equipment); Alexander Film Co. v. Lazeres & Morfesy, Civ.App. (Texas) 7 S.W.2d 599. For a somewhat analogous intercourse see International Text-Book Co. v. Gillespie, 229 Mo. 397, 129 S.W. 922; International Textbook Co. v. Pigg, supra, (and cases cited therein); Western Union Telegraph Co. v. Pendleton, 122 U.S. 347, 7 S.Ct. 1126, 30 L.Ed. 1187; and Western Union Telegraph Co. v. Texas, 105 U.S. 460, 464, 26 L.Ed. 1067.

The only question before us is whether plaintiff continued to deal with the films in this state after interstate commerce had wholly ceased. A review of some of the cases in our own state guide us to the conclusion that plaintiff was not dealing with the films in this state to an extent and in such a manner as to change the character of its transactions from that of interstate commerce to that of intrastate. In the cases of International Textbook Co. v. Pigg, supra, and International Text Book Company v. Gillespie, supra, the International Textbook Company was found not to be doing business in the state despite the fact that it solicited students in the state through the use of local agents who collected and forwarded tuition fees. It maintained offices in the state and employed people in these offices. It forwarded directly to its students instructions and books, which students, in turn, sent back to the Textbook Company the completed assignments. The books and papers furnished students were only *loaned* to the students and did not become the property of the students until the course was completed and paid for in full. Despite all of these operations in the

state by the International Textbook Company it was held in the Pigg case, decided by the United States Supreme Court and in the Gillespie case decided by our Supreme Court, that the International Textbook Company was not subject to the statutory requirements because its business was confined to interstate business alone.

In the case of Star-Chronicle Publishing Company v. United Press Association, 204 F. 217, (Eighth Circuit Court of Appeals), the facts show that the Press Association maintained leased wires in this state and kept and maintained an operator in the building of the Publishing Company and through this operation delivered news to the Publishing Company. In addition to the above, the Press Association had correspondents of its own in towns in the State of Missouri from whom it received news. Despite this activity within the state by the Press Association, the court held that: "the business done between the plaintiff and defendant in the case before us was wholly of an interstate character, such contracts were unaffected by the statute." (204 F. 1.c 222). A holding to like effect may be found in the case of Republic Steel Corporation v. Atlas Housewrecking & Lumber Corporation, 232 Mo.App. 791, 113 S.W.2d 155.

However, defendants contend that plaintiff is engaged in intrastate business because title to the motion picture films is reserved in plaintiff and when they were delivered to defendants interstate commerce ceased. Defendants also contend that the leasing of these films, through the efforts of defendants, to exhibitors in the State of Missouri was on forms supplied by plaintiff in which plaintiff is the lessor. Defendants also contend that they became the agents of plaintiff because of the control exercised by plaintiff over defendants and for this contention defendants rely upon the non-assignability of the franchise agreement and the cancellation of the franchise agreement that would result from the change of personnel of the corporate defendants.

It is true that the title to the motion picture films remains in plaintiff at all times after shipment to defendants and when defendants distribute them to the exhibitors. Because of this, as stated, defendants contend that interstate commerce ceased after the films came to rest in the State of Missouri and from therein the films were continuously dealt with as the property of plaintiff as leased chattels under written instruments to which plaintiff was a party as lessor and the various exhibitors as lessees. In support of their contention defendants cite Western Outdoor Advertising Company of Nebraska v. Berbiglia, Inc., Mo.App., 263 S.W.2d 205, and United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, 109 S.W. 567, and State ex rel. Hays v. Robertson, 271 Mo. 475, 196 S.W. 1132.

The case of Western Outdoor Advertising Co. v. Berbiglia, Inc., supra, was an action by an outdoor advertising sign company for certain rentals allegedly due under a written contract with the defendant. In the opinion the court found that the pleadings and evidence established certain facts, some of which we state as follows: that the principal business of plaintiff was the manufacture of advertising signs or billboards and shipping them into other states where, by contract, it is obliged to "erect" and "maintain" such signs and when so erected it leases a space thereon to a customer for a certain sum per month for a specified time with the option for a renewal on the same terms and for a like period by the customer; that plaintiff retained title to the sign and secured in its name leases on real estate for the location of such signs; that the plaintiff did secure certain leases on real estate in Missouri, and obtained permits for the erection of such signs from the County Planning Commission and employed Acme Sign Service of Kansas City, Missouri, to erect, maintain and repair said signs; that plaintiff employed a person to solicit customers in Kansas City, and to assist in obtaining lease sites for such signs and to make periodic inspections of the condition of the signs;

that its Vice-President and Superintendent of its Service Department inspected and maintained the signs and directed the maintenance crews; and that plaintiff had many other contract customers for similar service in Missouri. The court in finding that plaintiff was doing business in this state said:

"The shipment of the signs from Nebraska into Missouri does not finally determine that plaintiff was engaged in interstate commerce. The very purpose of the contract was for certain *services* to be rendered by plaintiff to defendant for profit, all of which were to take place in Missouri." (263 S.W. 2d l.c. 208.)

The court in rejecting the applicability of cases relied on by plaintiff said, as we pointed out heretofore:

"However, we recognize the rule that a determinative factor of whether the business was intrastate in nature was the question of *continued dealing* by the foreign corporation with the property after interstate commerce had wholly ceased, and whether that continued dealing was an isolated transaction or a continuing form of the business of the foreign corporation. *That is the rule which is applicable in the instant case.*" (263 S.W.2d l.c. 209). (Emphasis supplied).

In conclusion the court said:

" * * * We think the controlling principle of law recognized in all of the cases we have read compels the conclusion that plaintiff was *doing business* in this state. *It continued to deal* with the signs after the interstate shipment had ceased and derived its sole profit from such dealings over a period of several years." (263 S.W.2d l.c. 209). (Emphasis supplied).

While the retention of title in plaintiff's name was a factor considered by the court, the principal reason for the court's holding, as it said, was the continued dealing over a long period of years with the signs in Missouri after the interstate shipment had ceased. In the Western Outdoor Advertising Co. case the advertising company had no distributor or franchise holder in Missouri and dealt directly with the ultimate user of its services. In the instant case plaintiff did not deal directly with the exhibitors and this suit is not one against an exhibitor but is against the franchise holder only.

The case of United Shoe Machinery Company v. Ramlose, supra, was a replevin action for the recovery of shoe machinery. The evidence showed that the United Shoe Machinery Company of New Jersey was incorporated February 7, 1899, and did its general business from its office in Boston, Massachusetts. It was engaged in the manufacture and leasing of shoe machinery. It had done business in Missouri ever since it was incorporated and also had an agent and place of business in the City of St. Louis but it had never complied with the laws of this state relating to foreign corporations doing business in the state. All of the leases in question were to run seventeen years and the machinery covered was at the time of the execution of the leases in the City of St. Louis where it was to remain and be used by the defendant. The lease agreements, although signed in Massachusetts, were executed with a view to their performance in Missouri. The leases did provide that the title to the shoe machinery remained in the lessor at all times and that the lessee had no right of property in the machines, but only the right to use the machines upon the conditions contained in the leases. As stated, plaintiff commenced doing business in St. Louis in the summer of 1899 and it had and retained a resident agent in said city who looked over the leased machinery, the furnishing of any parts, the collection of royalties etc., and the company continued to do business in the State of Missouri by leasing machines to the St. Louis manufacturers for use in St. Louis. The court found that the contracts under which plaintiff claimed show-

ed upon their face that they were to be performed in the State of Missouri and held that plaintiff must comply with the statutes concerning foreign corporations doing business in this state. The reasoning that controlled the holding in the Western Outdoor Advertising Company case is found in United Shoe Machinery Company case, namely, the continued dealing over a long period of time with the machines of the plaintiff in the State of Missouri directly with the ultimate user of its machines. It is true that the court referred to the retention of title in the plaintiff but it was merely one factor among many that determined the court's ultimate holding. Here again, we repeat, that in the instant case plaintiff did not deal directly with the exhibitors.

In the case of State ex rel. Hays v. Robertson, supra, the foreign corporation sent its machinists into this state to erect and install its machines. These machinists were in the employ of the foreign corporation and were paid a salary. The evidence further showed that the foreign corporation had in its employ operators of its machines who would instruct the lessees how to operate the machines in the State of Missouri. Not only did the machinists install the machines but would make repairs to the machines in this state. While the court found that the title to the machines involved remained in the foreign corporation the court also found that the foreign corporation was transacting business in this state in its usual and ordinary business manner and had continually dealt with its property in this state. We find it necessary to again point out that this is a case where the foreign corporation dealt directly with the defendant in the suit. We have pointed out heretofore plaintiff in this action did not deal directly with the exhibitors.

Merely leasing the property of the foreign corporation to lessees within the state or shipping lessor's property into the state and retaining the title thereto does not, *without more,* constitute doing business

in this state. In other words, it does not amount to a course of continued dealing over a period of time with the property of the lessor after interstate commerce had ceased. Again it must be remembered that plaintiff in the instant case did not deal directly with the exhibitors and this suit is not one against an exhibitor but is against the franchise holder only. Support for what we have said can be found in the case of Star-Chronicle Publishing Company v. United Press Association, supra. For other cases wherein the foreign corporation retained title to the property shipped into this state and were found not doing business within the state, see Republic Steel Corporation v. Atlas Housewrecking & Lumber Corp., supra, and Superior Concrete Accessories v. Kemper, supra.

We have noted several times that this is not a suit against the exhibitors and that the plaintiff herein did not deal directly with the exhibitors but that this is a suit against the franchise holder only. This distinction is noted in several cases. In the case of Star-Chronicle Publishing Co. v. United Press Association, supra, the facts showed that the Press Association not only delivered news to the Publisher, but also condensed such news for outstate customers. The court in holding that the foreign corporation's intrastate activity as to the outstate customers could not be considered in permitting the Press Association to recover, said:

"The fact that the plaintiff may have furnished some of its 'pony' service to clients within the state, and as to them the business was intrastate, in no manner affected the validity of the contracts in question, as these contracts related wholly to interstate business." (204 F. 1.c. 222).

In the case of Superior Concrete Accessories v. Kemper, supra, where the plaintiff had an agent who carried on an intrastate business in connection with plaintiff's business, in holding that this activity had no

connection with the agreement upon which the suit was brought, said:

"* * * if the operations of respondent pursuant to the agreement on which this suit is based constitutes transactions in interstate commerce, the right to sue on the agreement is not denied whether or not other acts which constitute doing business in this state may be performed by respondent in the St. Louis area." (284 S.W.2d l.c. 487).

It should be observed that the title to the prints is of very little value, they only become valuable when exhibited to persons interested in a picture revealed by the prints.

Where the foreign corporation merely manufactures and leased the film, the exhibition itself being handled by others, it was held that qualification was not required. C. T., The Corporation Journal, "What Constitutes Doing Business by a Corporation in States Foreign to the State of Its Creation." 1963; Alexander Film Co. v. Lazeres & Morfesy, supra, and General Talking Picture Corporation v. Shea, supra.

We think that what we have said, supported by the cases cited, is a sufficient answer to defendants' contention that the retention of title and leasing of these films through the efforts of defendants to exhibitors in the State of Missouri by plaintiff does not constitute doing business in this state within the contemplation of the statutes requiring qualification of the foreign corporation.

█ We next take up the contention of defendants that the relationship of principal and distributor created by the franchise agreement made defendants the agents of plaintiff and in connection with defendants' activities with the exhibitors plaintiff is chargeable therefor as if it had directly dealt with said exhibitors. Even if we were to find that such a relationship did exist under the franchise agreement, without more, it does not make the defendants the agents of plaintiff so as to hold that defendants are conducting the business of plaintiff in this state.

It should be pointed out that the stipulation provides that the defendants have complete control of the activities of the corporate defendants and that plaintiff exercised no control over any of the defendants' employees.

The cases hold that the agency relationship would have no bearing on plaintiff's obligation to qualify under the statutes for the reason given heretofore, namely, that the transaction and litigation is not one between plaintiff and the exhibitors but between plaintiff and the franchise holder.

In Furst (and Thomas) v. Brewster, 282 U.S. 493, 51 S.Ct. 295, 75 L.Ed. 478, the Arkansas Supreme Court held that the plaintiff, a foreign corporation, was doing business in the State of Arkansas through a local Arkansas resident as its agent for the sale of its products in Arkansas. The Supreme Court of the United States in accepting the ruling of the Arkansas Supreme Court that the agency relationship existed, nevertheless said:

"The question is not as to sales made by Brewster in Arkansas, but as to the transactions between Brewster and Furst & Thomas. These transactions were clearly in interstate commerce * * *.

In pursuance of orders sent by Brewster in Arkansas to Furst & Thomas in Illinois, goods were shipped to Arkansas from the branch warehouse of Furst & Thomas in Tennessee. The ordering and shipment of the goods constituted interstate commerce, and the obligation to pay and the right to recover the amount due, according to the contract pursuant to which the goods were sent, arose in the course of that commerce." (282 U.S. 1. c. 497, 51 S.Ct. 1. c. 296, 75 L.Ed. 478).

For other cases wherein the court held that the dealing with the products of the foreign corporation by a local resident was not im-

putable to the foreign corporation so as to require it to qualify under the statutes to do business in Missouri, see Superior Concrete Accessories v. Kemper, supra, and Republic Steel Corporation v. Atlas Housewrecking & Lumber Corp., supra.

We agree with plaintiff that defendants have failed to show that any services were rendered in Missouri by the plaintiff to them or for that matter to anyone else which would require plaintiff to comply with the statutory requirements for doing business in the State of Missouri.

Defendants filed a counterclaim against plaintiff but by a provision in the stipulation it was provided "that plaintiff is not liable to defendants on defendants' counterclaim filed in the cause herein." And pursuant to said stipulation judgment was rendered in favor of plaintiff and against defendants on defendants' counterclaim. Nothing has been presented to this court concerning the counterclaim, it having been stipulated that defendants were not entitled to recover on their counterclaim.

The trial court in its judgment awarded to plaintiff the sum of $1758.36, "plus interest in the amount of six (6%) percent on that amount from October 1, 1958, the date on which suit was filed herein, * * *." Plaintiff contends that the allowance of interest was error because no interest is prayed for in plaintiff's petition and for this reason the trial court had no right to award interest.

■ Assuming, without so ruling, that it was error for the trial court to include interest in its judgment from the date on which the suit was filed, defendants are in no position to raise that point in this court because it has not been preserved for appellate review, defendants having failed to specifically set it out in their motion for new trial as required by Civil Rule 79.03, V.A.M.R. An examination of defendants' "Motion for New Trial or in the Alternative Judgment in favor of Defendants" fails to reveal any allegation of error based on the matter complained of in this court. Civil Rule 79.03, V.A.M.R., provides: "Allegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for a new trial; * * * (certain exceptions are listed not pertinent here.). * * * Allegations of error based on matters occurring or becoming known after final submission to court or jury shall be specifically set out."

If the matter complained of is error, it is one that occurred after the final submission to the court. As we have shown, the alleged error is not only one that has not been specifically set out, but has not been alleged at all, in defendants' after trial motion.

■ In the case of Anderson v. Curls, Mo.App., 309 S.W.2d 692, the court awarded judgment in favor of the plaintiff and taxed the costs against all of the defendants. The defendants appealed. On the appeal, certain of the defendants for the first time raised the point that they should not have had costs taxed against them. The appellate court refused to review the point because the claimed error had not been called to the attention of the trial court, in either a motion to amend the judgment or in a motion for new trial. It is fundamental that a trial court must be given an opportunity to review and correct its own errors before the appellate court can be called upon to review the matter.

■ We do not feel that our failure to review this matter would result in a manifest injustice to the defendants. Also, it would appear that defendants would be barred from making this claim of error by virtue of the stipulation signed by them. In paragraph (e) of the "Stipulation of Facts and Submission of Questions of Law" it is agreed by all of the parties that the sum of $1758.36 is due plaintiff "and that said amount, with interest thereon, was and is due and owing to the plaintiff." While this stipulated fact does not indicate when interest is to commence, it would be

reasonable to assume that it would start at the time the suit was filed.

We find no error. The judgment of the trial court should be affirmed. It is so ordered.

WOLFE and ANDERSON, JJ., concur.