The National Sign Co. *v.* The Maccar Cleveland Sales Co.

(Decided March 11, 1929.)

*Mr. T. F. Quigley,* for plaintiff in error.
*Messrs. Mann, Dray & Whitney,* for defendant in error.

Vickery, P. J. This cause comes into this court on a petition in error to the municipal court of the city of Cleveland. In the court below the plaintiff in error was plaintiff, and brought its action against the defendant to recover the balance due upon a contract. After hearing the evidence on both sides, and the arguments of counsel, the court found for the defendant, dismissing the petition and rendering judgment against the plaintiff for costs, to reverse which judgment error is prosecuted here.

From the record and arguments of counsel, we learn that the plaintiff in error is an Indiana corporation, formed for doing business in Indiana, and

that on or about the 9th day of October, 1925, it entered into a written contract with the defendant, whereby it agreed, for a stipulated price, to erect fifteen signs for the defendant company along public roads leading into Cleveland, which contract was to last for the full period of three years; that by virtue of this contract, the plaintiff was to lease land, erect the signs, and keep them in order by proper inspection and otherwise, for the full period of three years, and, if necessary, to refurbish by painting and varnishing. It seems that these signs were delivered and placed, so far as we know, in accordance with the contract, along proper highways leading into Cleveland, the plaintiff furnishing the location; that is, leasing the land upon which these signs were placed, and the property in the signs remaining in the plaintiff company.

It seems that a part of the contract price had been paid, but not all of it, there being a balance of $979, which the defendant company, defendant in error here, refused to pay—for what reason, so far as this suit is concerned, becomes immaterial—whereupon the plaintiff in error, as plaintiff, brought its action in the municipal court to recover the above sum which it alleged to be due it on this contract, and upon the trial of the action, as already stated, a judgment was rendered for the defendant below.

Now the only question that is urged in this court is one of much importance—whether, in brief, this was merely a sale of goods to be delivered into Ohio, and simply a matter of interstate commerce, or whether it involved the carrying on of business in Ohio by the defendant company.

It is admitted in this record that the plaintiff com-

pany had not complied with Section 5508 of the Ohio statutes, in that, before it could do business in Ohio, if it came within the statute, it must comply with the law and procure a license, and that was the reason the trial court gave why the judgment was rendered for the defendant. Now the record shows that this contract was made in Indiana, at least it was not binding upon either party until it had been approved in the Indiana office at Kokomo, Indiana. It is perfectly manifest that it was within the contemplation of both parties that the performance of the contract was to take place in Ohio, but in our judgment it does not make much difference where the contract was made, whether in Ohio or in Indiana, for it is conceded that the plaintiff company is a foreign corporation, and has no office or place to do business, nor has it complied with the above-cited statute in procuring a license to do business in Ohio, and so, as already stated, the sole question to be determined is: Was the business or work contemplated by this contract upon the part of the plaintiff company for the defendant doing business or performing work in Ohio?

At first blush one would think it was simply the selling of material by a foreign corporation to be delivered in Ohio, and, if so, it would be only interstate commerce and would not be subject to the statutes of Ohio; but upon examination is that the fact? Here, as a matter of fact, there was no sale whatever. There was a contract for service, for advertising the products or the business of the defendant company, and all of that was to be performed in Ohio. Now the method of doing that was, of course, first the exercise of interstate commerce,

or rather the use of interstate commerce in transporting the goods into Ohio, and, if the matter had stopped there, and the plaintiff had simply sold the goods, to be taken care of by the consignee in Ohio, there would be no question but that it would be interstate commerce only, and the question involved here could not arise. It makes no difference where the contract was made, it would still be interstate commerce, and the contract could be enforced wherever service could be obtained upon the parties. Here it contemplated upon the part of the plaintiff below, plaintiff in error here, the keeping of a crew of men, and it makes no difference whether they were imported from Indiana, or whether they were residents in Ohio. They were on the pay roll of the foreign corporation and performed work for the foreign corporation, and, so far as this contract is concerned, the entire work was to be and was performed in Ohio, and I have spoken of a sale, and I have likewise spoken of the fact that in the instant case there was no sale; the contract being one to perform service in erecting these signs and keeping them in order for the full period of the contract, to wit, three years.

It is amazing to find how many decisions there are upon this question. In *Browning* v. *City of Waycross,* 233 U. S., 16, 34 S. Ct., 578, 580, 58 L. Ed., 828 (1914), a foreign corporation of St. Louis, through its agent, made a contract whereby it sold a certain number of lightning rods to be erected in the city of Waycross, Georgia, which it was to erect upon buildings in Georgia, and the entire price was fixed in the sale price. The United States court held that the affixing of the lightning rods "con-

cerned merely the doing of a local act after interstate commerce had completely terminated.'' Now that case is not anywhere nearly so strong as the instant case.

In *Phoenix Nursery Co.* v. *Trostel,* 166 Wis., 215, 164 N. W., 995, L. R. A., 1918B, 311 (1917), a foreign corporation sold to a person in Wisconsin a quantity of trees and shrubs, and as a part of the contract it agreed to plant those trees and to replant them by replacing any that died. The trees were not paid for, a suit was brought, and the court in that case, interpreting the Wisconsin statute (1915), Section 1770b, which is practically identical with Section 5508, General Code of Ohio, held that this was not interstate commerce, but was the doing of work and the performing of business in the state of Wisconsin, and was within the statute, and held that the contract was absolutely void.

We recognize the fact that nursery stock might be sold from New York state, we will say, and shipped into Ohio, and the fact that it was shipped into Ohio would not constitute doing work or business in Ohio. That would still be interstate commerce, but when, as in the Wisconsin case, they undertake to perform services and work in relation thereto, which would run over quite a period of time in replanting the trees and seeing that they had a successful growth, the transaction becomes more than a mere sale from one state into another. In this case the court says that it is not proper that courts should permit people to derive the benefit from a contract and then hold them not liable for the price of the same. The policy of the law is against that, but, where there is a positive statute declaring such contracts void, the courts have no option but to enforce the statute.

In *A. H. Andrews Co.* v. *Colonial Theatre Co.* (D. C.), 283 F., 471 (1922), seats for a theater were sold, and, as a part of the contract, they were to be installed in the theater and were to remain the property of the foreign corporation until after they had been paid for. Suit was brought in that case, and, the plaintiff in the case not having complied with the statute of the state where the suit was brought by procuring a license, it was held that such a suit could not be maintained, and that the contract was absolutely void. In that case the court said that the installation of seats was not such a question of skill that it would require a peculiar knowledge in order to install them, but that it might be done by any person, and therefore it had ceased to be interstate commerce and became a matter of local regulation. This is to distinguish it from those cases where an article has been sold in one state by a foreign corporation to a customer in another state, and, as a part of the consideration of the sale, the article is to be installed by the consignor, for it may require some skill and knowledge of the machinery to properly install it. *York Manufacturing Co.* v. *Colley,* 247 U. S., 21, 38 S. Ct., 430, 62 L. Ed., 963, 11 A. L. R., 611 (1918). Where that is done, that fact alone does not take the case from the category of contracts coming within the interstate commerce provision, but, where there is nothing more involved than mere ordinary labor, and not any particular skill, or where there is something remaining to be done after the machine is installed, such as keeping it in order and keeping the title to it, it is work in the consignee's state, so that it would be prohibited by the laws of that state.

An examination of the various authorities that are cited by the plaintiff in error in this case shows that most, if not all, of the cases relate to *sales* of property by a corporation in one state to a consignee in another state, where there is nothing to be done, except in particular cases where the goods are to be set up, but the title is to pass, and the consignor has nothing more to do to it. I say, an examination of the cases and authorities cited by the plaintiff in his brief will throw most, if not all, of the cases into this category, and no one questions that a foreign corporation may sell goods in Ohio without complying with the law in Ohio compelling it to be registered or to take out a license. Such a corporation is not doing business in Ohio within the meaning of the law.

Now there is a purpose in this statute. Here was a contract which involved the procuring of leases on land by the plaintiff below, the erection of these signs thereon, and the maintaining of them. The installation of the signs is only a part of the contract. Suppose these signs were placed and the full contract price was paid by the vendee, if in the present case one could call the defendant a **vendee;** if the plaintiff company failed to keep the remainder of its contract, the redress would have to be sought in the Indiana courts. Now one of the purposes of the Ohio statute was that foreign corporations doing business in Ohio with the people of Ohio could be sued in Ohio in case of a breach of the contract, and this, of course, is an important factor to take into consideration. Here the defendant would have no redress against the plaintiff for a breach of contract without going to the Indiana courts, in a foreign

land, at the home of the corporation which it must sue in order to get redress, although its entire benefit is derived from its Ohio patrons. It is no fanciful scheme to think that this corporation might establish itself close to the Ohio line and maintain its entire business—that is, the furnishing of service to the people of Ohio—with no office, no place where it could be sued in Ohio, and still perform all its service in Ohio.

It is said in this case that the men who performed the work for this foreign corporation are a crew of men that move from place to place and live in hotels. To us it does not seem to make any difference who the men are or where they come from. They are on the pay roll of the foreign corporation, and they surely are performing labor for the foreign corporation, not only in installing these signs, but in maintaining them. In other words, this corporation has contracted to put up these signs and to furnish service to the defendant company for the full period of three years. Now that is not interstate commerce. It becomes a matter of local concern, and it comes within the provisions of the Ohio law.

We think, therefore, that, under the law of Ohio, the plaintiff company not having complied with the statutes of Ohio, the contract is void, and plaintiff has no right to maintain a suit upon it, and we think the court below was right in its decision. Not finding any error in the record, the judgment will be affirmed.

*Judgment affirmed.*

SULLIVAN and LEVINE, JJ., concur.