WILMINGTON DRY GOODS COMPANY, a corporation existing under the laws of the State of Delaware, d. b. a., *v.* NATIONAL AUTOMATIC MACHINE COMPANY, a corporation existing under the laws of the State of Minnesota, p. b. r.

(*February* 1, 1937.)

Heard before RICHARDS, J., without a jury.

*Edmund S. Hellings* and *Ivan Culbertson* for National Automatic Machine Company, the plaintiff below.

*Biggs, Biggs and Lynch* for Wilmington Dry Goods Company, the defendant below.

Superior Court for New Castle County, No. 48, November Term, 1935.

RICHARDS, J., delivering the opinion of the Court:

There was some evidence at the trial that the scales never worked satisfactorily, and that the plaintiff never serviced them properly, as it agreed to do, but this defense was abandoned, and, therefore, need not be considered.

It is admitted that two separate and distinct contracts for the sale of scales were entered into between the plaintiff and the defendant, and that in pursuance thereof five sets of scales were delivered to and received by the defendant. The plaintiff is a corporation created under the laws of the State of Minnesota, and the defense was originally made

that it had not complied with the foreign corporation law of this state, by filing in the office of the Secretary of State a certified copy of its charter, the name of its authorized agent and a sworn statement of its assets and liabilities. This defense was likewise not pressed and is not now before the Court. The same question was before the Supreme Court in the case of *Model Heating Co. v. Magarity*, 2 *Boyce* (25 *Del.*) 459, 81 *A.* 394, *L. R. A.* 1915*B*, 665. In that case it was decided that the object of the statute was to subject foreign corporations doing business in this state to the jurisdiction of the Courts and the inspection of its officers; and that contracts made by such corporations that had not complied with the statute were not void or unenforceable. The defendant still maintains that the plaintiff is not entitled to recover, because it has not complied with the statute of this state requiring the payment of an occupational license. The statute in question is *Section* 198 of the *Revised Code* of 1915 (*Section* 161, *c.* 6) which contains this language:

"Every individual, association of persons, firm or corporation engaged in and desiring to continue engaged in the business of purchasing and selling produce, goods, wares and merchandise, or any property of whatever description, either by the wholesale or retail, shall, annually, on or before the first of June, take out a license to engage in, prosecute, follow and carry on the said business and occupation."

It cannot be denied that the plaintiff made two sales in this state, the same being shown by the contracts which were admitted in evidence. These sales were made by Mr. O'Neill who plaintiff's manager testified had authority to represent it in this state.

In support of this last contention the defendant relies upon these Delaware cases: *Adams' Adm'r v. Stewart,* 5 *Harr.* 144, *Reeder v. Jones,* 6 *Penn.* 66, 65 *A.* 571, and *Strout Co. v. Howell,* 2 *Boyce* (25 *Del.*) 489, 82 *A.* 238, and *Id.,* 4 *Boyce* (27 *Del.*) 31, 85 *A.* 666.

The plaintiff relies on the case of *Gregory & Co. v. Bailey's Adm'r, 4 Harr.* 256. In this case the Court held that the vendors of certain lottery tickets, in the State of New Jersey, who had purchased the whole lottery scheme from the grantees of the State of Delaware, had the right to sell said lottery tickets by wholesale within this state without taking out a license.

It is contended that there is no conflict between that case and the more recent case of *Strout Co. v. Howell,* decided by the Supreme Court in 1913, and reported in 4 *Boyce* (27 *Del.*) 31, 85 *A.* 666.

The last mentioned case was one in which the plaintiff, a real estate company, brought suit to recover commissions for selling land for the defendant. The defendant set up the plea that the plaintiff did not have a license authorizing it to engage in business in the State of Delaware. To this plea the plaintiff set out, by way of replication, that it was incorporated under the laws of Maine, and had complied with the laws of Delaware with respect to foreign corporations doing business therein. A demurrer to this replication was sustained by the trial Court on the authority of *Reeder v. Jones,* and the judgment of the trial Court was affirmed by the Supreme Court. In said case of *Strout Co. v. Howell* the Court reviewed the statute in question, calling attention to the fact that it seemed clear that it was not passed for the purpose of raising revenue only, but also to promote some object of public policy; such as preventing the conducting of certain kinds of business which involved danger to the morals of the people or unusual opportunities to deceive and defraud. As examples of which it called attention to the selling of intoxicating liquor and agencies for foreign life and fire insurance companies.

From the following language it seems clear the Court did not intend to hold that contracts made by persons or

corporations doing business in this state, could be enforced when said persons or corporations had not obtained a license authorizing the prosecution of such business.

"The very omission of these features strengthens the view that in addition to the recurring penalties named in the act, the aid of the courts in enforcing contracts should be refused to all who do not comply with the condition fixed by the statute as a prerequisite to the right to carry on the specified kinds of business, in the course of which the contract in question was made.

"The original legislative purpose is not affected by the fact that insurance agencies, insurance companies and sellers of intoxicating liquor are not now subject to the provisions of the act, but are now regulated by special statutes with numerous restrictions to protect the public from imposition, fraud, or to promote morality, peace and good order. The object of the statute as originally passed was primarily to raise money, but also to restrict and regulate business of certain kinds by withholding the right to carry them on except from those who obtain a license therefor. It operates on the business as well as on the person. Granting the license is the means by which the named kinds of business are in a measure restricted, regulated and controlled, and is also a method for obtaining revenue."

I cannot agree with the contention advanced on behalf of the plaintiff, that it is not required to obtain an occupational license authorizing it to transact business in this State, unless other reasons can be found which are sufficient to except it from the statute.

The additional reason is relied upon in the plaintiff's brief, that to compel the plaintiff to take out a license under the facts in this case is a regulation of inter-state commerce.

The evidence discloses that the plaintiff is a Minnesota corporation having no regular place of business in this state, but merely doing business here through its Agent who came here for the purpose of soliciting orders; that it never kept any stock of goods in this state from which deliveries to purchasers in this state were made; that at the time the orders for the weighing machines were taken the machines were located outside of the state and shipped into the state for the purpose of filling the orders. In support of this last proposition the plaintiff calls attention to the rule established by the Supreme Court of the United

States in *Crenshaw v. Arkansas,* 227 *U. S.* 389, 33 *S. Ct.* 294, 297, 57 *L. Ed.* 565. There the state of Arkansas had a license statute substantially the same as the one in force in this state.

A Missouri corporation which manufactured cooking ranges sold them through traveling salesmen and among other places, in the State of Arkansas. When an order was obtained for a range in the State of Arkansas, it was filled by shipping one there from the State of Missouri. An employee of the range company was arrested and convicted for violating the Arkansas license statute, and in due course the case was carried to the Supreme Court of the United States. There it was held, that the sale of goods which are in another state from that in which the sale is made, for the purpose of subsequently bringing them into the state in which the sale was made, is interstate commerce and cannot be obstructed or regulated by the police power of the state. Mr. Justice Day, who delivered the opinion of the Court stated:

"Nor does the fact that the law now in question was alleged to have been passed in the exercise of the police power of the state make it lawful."

In *Robbins v. Shelby County Taxing District,* 120 *U. S.* 489, 7 *S. Ct.* 592, 596, 30 *L. Ed.* 694, the State of Tennessee passed a statute imposing a license tax upon drummers and persons not having a regular licensed place of business in the State, who sold goods, wares and merchandise by sample. In that case the Court recognized the power of the state to pass inspection laws to secure the due quality and measure of products and commodities, and laws to regulate or restrict the sale of articles deemed injurious to the health or morals, but it also laid down this principle:

"The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce."

The case of *Brennan v. City of Titusville,* 153 *U. S.* 289, 14 *S. Ct.* 829, 832, 38 *L. Ed.* 719, is another leading case on this question. In that case a city ordinance required the payment of a license tax for soliciting or taking orders for merchandise from persons other than manufacturers or licensed merchants, and on its face declared the same to be a license for general revenue purposes. Brennan who was an agent of J. A. Sheppard, a manufacturer of picture frames and maker of portraits in Chicago, Illinois, solicited orders in Pennsylvania and other states by going personally to the residences and exhibiting samples. Upon receiving orders the same were forwarded to Sheppard in Chicago, Illinois, where the goods were made and shipped by Sheppard to the purchaser in Titusville, Pennsylvania, by railroad, freight and express. Brennan was arrested for violating said city ordinance and upon conviction was sentenced to pay a fine of $25. He appealed to the Supreme Court of the State which affirmed the judgment, and a writ of error being sued out to the Supreme Court of the United States judgment was reversed.

Mr. Justice Brewer referred to the matter in these words:

"Even if it be that we are concluded by the opinion of the supreme court of the state that this ordinance was enacted in the exercise of the police power, we are still confronted with the difficult question as to how far an act held to be a police regulation, but which in fact affects interstate commerce, can be sustained. It is undoubtedly true that there are many police regulations which do affect interstate commerce, but which have been and will be sustained as clearly within the power of the state; but we think it must be considered, in view of a long line of decisions, that it is settled that nothing which is a direct burden upon interstate commerce can be imposed by the state without the assent of congress, and that the silence of congress in respect to any matter of interstate commerce is equivalent to a declaration on its part that it should be absolutely free."

The facts of the case of *Caldwell v. State of North Carolina,* 187 *U. S.* 622, 23 *S. Ct.* 229, 233, 47 *L. Ed.* 336, were substantially the same as those in *Brennan v. Titus-*

*ville.* The difference being that the goods were shipped to the manufacturer's agent in North Carolina who delivered them to the persons who ordered them. The Court made this comment:

"Nor does the fact that these articles were not shipped separately and directly to each individual purchaser, but were sent to an agent of the vendor at Greensboro, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. It was only that the vendor used two instead of one agency in the delivery. * * * Transactions between manufacturing companies in one state, through agents, with citizens of another, constitute a large part of interstate commerce; and for us to hold, with the court below, that the same articles, if sent by rail directly to the purchaser, are free from state taxation, but, if sent to an agent to deliver, are taxable through a license tax upon the agent, would evidently take a considerable portion of such traffic out of the salutary protection of the interstate commerce clause of the Constitution. It cannot escape observation that efforts to control commerce of this kind, in the interest of the states where the purchasers reside, have been frequently made in the form of statutes and municipal ordinances, but that such efforts have been heretofore rendered fruitless by the supervising action of this court."

Also in *Dozier v. Alabama,* 218 *U. S.* 124, 30 *S. Ct.* 649, 54 *L. Ed.* 965, 28 *L. R. A.* (*N. S.*) 264, where the facts were similar to those of the last two cases above cited, a statute of the State of Alabama was held to be a regulation of interstate commerce and, therefore, void.

In the case of *Hannibal & St. J. R. Co. v. Husen,* 95 *U. S.* 465, 473, 24 *L. Ed.* 527, where a similar action was under consideration this language was used:

"The police power of a State cannot obstruct foreign commerce or inter-state commerce beyond the necessity for its exercise; and under color of its objects not within its scope cannot be secured at the expense of the protection afforded by the *Federal Constitution.*"

Against the position taken by the plaintiff below respondent, that to require it to take out a license in this state would be a regulation of interstate commerce, the defendant below appellant maintains that if the contract requires a selling corporation to do in a state some part of the business or acts in the fulfillment of the contract, it

will be regarded as doing business in the state and acts in compliance therewith cannot be classified as interstate commerce. In support of this proposition it cites *Nernst Lamp Co. v. Conrad,* 165 *Mich.* 604, 131 *N. W.* 120; *Wiley Electric Co. of Jackson v. Electric Storage Battery Co.,* 167 *Miss.* 842, 147 *So.* 773; *Interstate Construction Co. v. Lakeview Canal Co.,* 31 *Wyo.* 191, 224 *P.* 850; *St. Louis Southwestern Ry. Co. of Texas v. Davy Burnt Clay Ballast Co. (Tex. Civ. App.),* 273 *S. W.* 630, and *National Sign Co. v. Maccar Cleveland Sales Co.,* 33 *Ohio App.* 89, 168 *N. E.* 758. Attention is called to the fact that all of these cases were decided by the various state courts mentioned, and none of them were decisions of the Supreme Court of the United States.

In *Nernst Lamp Co. v. Conrad,* the plaintiff, a foreign corporation, brought suit against the defendant in Michigan to recover for goods sold him under a contract. Said goods were manufactured at the plaintiff's plant in Pittsburgh, Pennsylvania. The contract under which the sale was made provided for the maintenance of an agency in Michigan for an indefinite period of time to care for the goods sold free of charge. The trial court directed a verdict for the defendant on the ground that the plaintiff had not complied with the Michigan statute with respect to foreign corporations doing business in that state. The Supreme Court of Michigan in considering the question of whether the business was interstate commerce, said it was not the case of a single transaction within the state, accompanying or merely incidental to the business of selling goods and installing or setting them up for use, but was the case of conducting in the state a regular and continuous business in aid and in furtherance of the general business so carried on within the state.

The facts in the case of *Wiley Electric Co. of Jackson v. Electric Storage Battery Co.* were practically the same

as those in the case last mentioned; branch stores being maintained in Mississippi where goods were constantly kept for sale. The question of interstate commerce does not seem to have been raised in this case.

In *Interstate Construction Co. v. Lakeview Canal Co.*, a Colorado corporation entered into a contract in Denver to do certain work for the defendant in the State of Wyoming. Suit being brought on said contract for the balance claimed to be due, the defense was made that the plaintiff had not complied with the State Constitution with respect to foreign corporations doing business in the state. In order to maintain that it was engaged in interstate commerce the plaintiff introduced evidence to show that it had brought certain horses, machinery and other equipment into the state from Colorado. The Court held the act of bringing the horses, machinery and other equipment into the state was in furtherance of its work under the contract and not interstate commerce.

The decision in the case of *St. Louis Southwestern Ry. Co. of Texas v. Davy Burnt Clay Ballast Co.* has very little bearing upon the question now under consideration. The court held that a foreign corporation doing business in Texas under contracts made and to be performed in Texas must allege and prove that it had a permit to do business in Texas.

In *National Sign Co. v. Maccar Cleveland Sales Co.* the plaintiff, being a foreign corporation, brought suit against the defendant in Ohio to recover the balance due for the performance of said work. Under this contract the plaintiff was to advertise the products of the defendant by leasing land in the state of Ohio, erecting signs thereon and keeping said sign in repair for a period of three years. In reply to the defense that it had not secured a license authorizing it to do business in Ohio, the plaintiff contended that it was

engaged in interstate commerce. The Court held that the contract was not one of sale but one of service which was to be performed in the State of Ohio, necessitating keeping a force of men in Ohio for that purpose.

I am not unmindful of the fact that the contracts in the case under consideration provided that the plaintiff below respondent should service and keep in working condition the scales sold to the defendant below appellant; also that there was some evidence that the plaintiff below respondent did send a man to Wilmington from another state to do work on the scales on two or three occasions. But there was nothing tending to show that the plaintiff below respondent maintained an agency in this state for the purpose of keeping the scales in order, or that it kept men here for that purpose. It is not denied that the scales were manufactured outside of this state and sent here in fulfillment of the orders taken by the representative of the plaintiff below respondent while in this state. I can see no similarity between the facts of this case and the facts of the case cited by the defendant below appellant and above referred to.

Being convinced that the shipment of the scales into this state by the plaintiff below respondent under the terms of the contracts which it entered into with the defendant below appellant, was in furtherance of interstate commerce, I am satisfied that the defendant below appellant was not required to take out an occupational license in this state.

Judgment is, therefore, rendered for the plaintiff below respondent for $530.71.