48 So.2d 428

**CADDEN–ALLEN, Inc. v. TRANS–LUX NEWS SIGN CORP.**

**3 Div. 568.**

Supreme Court of Alabama.

Oct. 26, 1950.

John R. Matthews, Jr., Fred S. Ball, Jr., and Ball & Ball, all of Montgomery, for appellant.

Jack Crenshaw, of Montgomery, for appellee.

BROWN, Justice.

This is an action of assumpsit by the appellee to recover rents alleged to have accrued under a written contract for the lease of certain Trans-Lux News Signs by the plaintiff to the defendant for a term of three years. The amount claimed is $3,187.-50, alleged to have accrued for the months of April, June, July, August, September and October, which the complaint alleges is past due and unpaid. The complaint shows that the plaintiff is a non-resident of the state and that security for costs was given at the filing of the suit.

The plaintiff declares on the common count. The defendant pleaded the general issue and a special plea alleging in substance that at the time of making the contract the defendant was a foreign corporation and had not at that time complied with the provisions of § 232 of the Constitution nor § 192, Title 10, Code of 1940, requiring every corporation not organized under the laws of this state, before engaging in or transacting any business in this state, to file with the secretary of state a certified copy of its articles of incorporation or association and to file an instrument in writing under the seal of the corporation and signed officially by the president and secretary thereof, designating at least one known place of business in this state and appointing an authorized agent or agents resident at such designated place.

At the trial the testimony was taken *ore tenus* and after hearing the evidence judgment was rendered in favor of the plaintiff for the sum claimed, $3,187.50. It is from that judgment that this appeal is prosecuted.

The evidence is without dispute that the sign before it was installed consisted of a number of sections or boxes in which sockets for electric bulbs had been installed and a machine which operated the electric equipment, so as to flash the sign across the side and face of the building where it was installed. This installation was made by drilling holes in the outer surface wall of the building and securing brackets to the wall so as to hold these several boxes and the electric machine was installed on top of the building, the control wires leading from the machine running to the office of the defendant, from which the advertising matter was injected into the machine through said controls, wires or apparatus. The evidence further shows that the rent was payable monthly at six hundred dollars per month and that the defendant failed to meet all payments and failed to comply with the lease by giving notice on a payment period that it had elected to cancel the contract as provided therein. The evidence further shows Trans-Lux News Sign when installed contained 600 electric incandescent lights. The lease contract provided that the plaintiff should not only install the boxes and machines with the wires leading from the machines to the control room, but that the lessor "agrees at his expense to provide service on said sign and control, including replacement of defective lamps and parts and on receipt of notice from the lessee to service said sign and control at lessor's expense and during the regular working hours of the lessor."

The evidence is further without dispute that the plaintiff employed two skilled electricians, residents of Montgomery, Alabama, one to inspect the machine, controls and the electric boxes constituting the sign and to clean them up monthly and the other to look after the bulbs in the several boxes, to take out the old or burned out bulbs and replace them with fresh bulbs and keep said boxes clean. The evidence further shows that said sign was removable and the title to it remained in the plaintiff. That it was op-

erated for one year and after the defendant defaulted in the payment of the rent, the same was removed from the building by the plaintiff.

There is some contention as to the amount of the indebtedness, the defendant insisting that it was entitled to credit of $1800 which was disallowed, but the main and controlling question presented goes to the validity of the contract and lease and the right of plaintiff to recover.. The defendant's contention is that the installing of said machine and its maintenance during the time it was operated constituted doing business in Alabama, in violation of the Constitution and the statutes.

The plaintiff on the other hand contends that these acts of ownership, leasing, reservations of rents, inspection and right of removal, were mere incidents of interstate commerce and, therefore, it was not engaged in doing business in Alabama. To sustain its contention the appellee cites and relies on Puffer Mfg. Co. v. Kelly, 198 Ala. 131, 73 So. 403; Houston Canning Co. v. Virginia Can Co., 211 Ala. 232, 100 So. 104, and York Mfg. Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 463.

The first case cited involved the sale of a soda fountain shipped in interstate commerce for delivery to the purchaser in Alabama under an "agreement to install the soda fountain and its appurtenances in defendant's place of business in Montgomery" and the court held that that act was a reasonable incident of its sale and with it constituted a single act of interstate commerce. Puffer Mfg. Co. v. Kelly, 198 Ala. 131, 136, 73 So. 403.

In the second case cited there was no agreement of the lessor to repair or maintain. This fact differentiates that case from the facts in the instant case. Moreover the decision in that case is on the border line and is of doubtful soundness. Houston Canning Co. v. Virginia Can Co., supra.

In York Mfg. Co. v. Colley, supra [247 U.S. 21, 38 S.Ct. 432], the court observed: "The only possible question open therefore is: Was the particular provision of the contract for the service of an engineer to assemble and erect the machinery in question at the point of destination and to practically test its efficiency before complete delivery relevant and appropriate to the [complete delivery] of the machinery?" That was a sale of machinery, the court holding in line with the weight of authority that the mere assembling and testing of a machine so shipped is an act of interstate commerce. This is in entire agreement with our cases. Citizens Nat. Bank v. Buckheit, 14 Ala.App. 511, 71 So. 82.

The undisputed evidence in the case at bar shows that the plaintiff reserved to itself all the elements of property rights in the electric sign,—the legal title, the right to lease, reserving the rents, the right to inspect and repair and maintain and the right to remove the same. The evidence is further without dispute that the appellee exercised all these rights during the year it leased its equipment and it was operated in Alabama. All these acts of ownership were performed in Alabama in utter contempt and disregard of the Constitution and laws of this state. Code of 1940, Title 10, § 194; Constitution of 1901, § 232; Alabama Western R. Co. v. Talley-Bates Const. Co., 162 Ala. 396, 50 So. 341; George M. Muller Mfg. Co. v. First Nat. Bank of Dothan, 176 Ala. 229, 57 So. 762; Imperial Curtain Co. v. Jacobs, 163 Mich. 72, 127 N.W. 772.

As pointed out by this court in the Puffer Mfg. Co. Case, supra [198 Ala. 131, 73 So. 404]: "By way of contrast, it may be noted that, in an interstate sale and delivery of lightning rods, the execution of an agreement by the vendor to attach the rods to the vendee's house was held to be the transaction of local business, and subject to a local law, imposing an occupation tax on 'agents or dealers engaged in putting up or erecting lightning rods.' Browning v. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828. Speaking through Mr. Chief Justice White, the court in that case said: 'We are of the opinion that the court below was right in holding that the business of erecting lightning rods under the circumstances disclosed was within the regulating power of the state, and not the subject of interstate commerce, for the follow-

ing reasons: (a) Because the affixing of lightning rods to houses was the carrying on of a business of a strictly local character, peculiarly within the * * * control of state authority. (b) Because, besides, such business was wholly separate from interstate commerce, involved no question of the delivery of property shipped in interstate commerce, or of the right to complete an interstate commerce transaction, but concerned merely the doing of a local act after interstate commerce had completely terminated. * * * It was not within the power of the parties by the form of their contract to convert what was exclusively a local business, subject to state control, into an interstate commerce business protected by the commerce clause."

"The ratio decidendi is thus stated: 'It is manifest that if the right here asserted were recognized, * * * all lines of demarcation between national and state authority would be obliterated, since it would necessarily follow that every kind or form of material shipped from one state to another and intended to be used after delivery in the construction of buildings or in the making of improvements in any form would or could be made interstate commerce.'

"In conclusion, the Chief Justice significantly observes: 'Of course we are not called upon here to consider how far interstate commerce might be held to continue to apply to an article shipped from one state to another, after delivery and up to and including the time when the article was put together or made operative in the place of destination in a case where, because of some intrinsic and peculiar quality or inherent complexity of the article, the making of such agreement was essential to the accomplishment of the interstate transaction * * *.'"

The principle stated in that opinion does not go so far as to bring the act performed by the plaintiff in this case within an incident of interstate commerce. Our conclusion is that the act of installing, maintaining and keeping the sign in repair and the removal thereof was the transaction of local business, in violation of the Constitution and the statutes of this state.

The judgment of the circuit court is, therefore, reversed and one here rendered in favor of the defendant.

Reversed and rendered.

LIVINGSTON, SIMPSON and STAKELY, JJ., concur.