**WESTERN OUTDOOR ADVERTISING CO.
OF NEBRASKA**

v.

**BERBIGLIA, Inc.**

No. 21888.

Kansas City Court of Appeals.
Missouri.

Dec. 7, 1953.

Brenner, VanValkenburgh & Wimmell,
by Daniel L. Brenner and Bernard L. Balkin, Kansas City, for appellant.

206

Newbill, Brannock, Buck & Gray, by W. Arnold Brannock and William G. Gray, Kansas City, for respondent.

CAVE, Presiding Judge.

This is an action by an outdoor advertising sign company for certain rentals allegedly due under a written contract. Defendant filed answer and counterclaim praying for damages. The cause was tried by the court without a jury and the court found for the plaintiff in the amount sued for and against the defendant on its counterclaim, and entered judgment accordingly, from which defendant duly appealed.

The petition alleged that plaintiff was a corporation with its principal place of business located at Omaha, Nebraska; that it entered into a certain written contract with the defendant wherein the defendant requested the plaintiff to erect fifteen advertising displays, or signs, for which defendant agreed to pay the sum of $7 each per month for a period of thirty-six months; that plaintiff accepted said contract and performed all of the obligations imposed upon it by said contract, but that defendant had failed to make the payments according to agreement and there was a balance due of $2,310.

Defendant's answer admitted the execution of the contract but denied the plaintiff had complied with the provisions thereof, and further alleged that plaintiff is a corporation organized under the laws of the State of Nebraska and that its principal place of business is in said state, and that plaintiff has never qualified or been licensed to do business in this state as required by Sections 351.570 and 351.635 RSMo 1949, V.A.M.S. The counterclaim alleged certain breaches of the contract by plaintiff which are unnecessary to mention at this time. The reply denied certain allegations of the answer and counterclaim but admitted "that it agreed to erect said display signs at locations 'plainly visible to highway traffic' and to maintain each such display sign, together with the advertising matter thereon in good condition for a period of thirty-six months; * * *".

The first point urged by defendant (appellant) is that the plaintiff is a foreign corporation and *was doing business* in this state without having authority to do so and therefor it cannot maintain this action in the courts of this state. Sec. 351.570, supra, provides: "A foreign corporation organized for profit, before it transacts business in this state, shall procure a certificate of authority so to do from the secretary of state. * * *" Sec. 351.635 provides "Every foreign corporation now doing business in or which may hereafter do business in this state which shall neglect or fail to comply with this chapter shall be subject to a fine * * * (and) in addition to which penalty, no foreign corporation, failing to comply with this chapter, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of the contract or tort, while the requirements of this chapter have not been complied with."

It is conceded that plaintiff is a foreign corporation and that it has never applied for or received a certificate of authority to transact business in Missouri. Thus the question presented is, was plaintiff *doing business* in this state within the meaning of the statutes, supra.

The substance of the contract is that defendant employed plaintiff to erect, in Jackson County, Missouri, and at locations plainly visible to highway traffic, fifteen advertising displays, four feet by eight feet, each display to be maintained in good condition by the plaintiff for a period of thirty-six months; that such displays should be located at sites to be agreed upon by the parties; that the advertising to appear on each display was to be of a certain type; that the plaintiff was to hold the defendant free from liability for damages due to plaintiff's neglect or otherwise; that defendant was to pay plaintiff monthly in advance the sum of $7 for each display and in addition was "to pay any and all sales, consumers' and/or other form of special tax levied by reason of this contract;" and that the contract could be renewed by defendant on the same terms, rates and conditions and

for the same period as provided "herein" by giving proper notice in writing.

The evidence is that plaintiff is engaged in the outdoor sign business in Omaha, Nebraska; that plaintiff employed a salesman, a Mr. Shelters, who lived in Kansas City, Missouri, to solicit outdoor sign advertising in Kansas City and neighboring cities for the plaintiff; that he was paid on a commission basis; that his duties entailed locating in advance a number of satisfactory sites on the highways leading in and out of Kansas City, arranging for the leasing in plaintiff's name of the land where signs were to be erected; that he then solicited customers for outdoor advertising and would show the available sites for signs or make arrangements to obtain sites that the customer might desire; that he would periodically check the signs which had been erected and report to the plaintiff on their condition. Mr. Shelters solicited the defendant for the purchase of plaintiff's advertising service which resulted in the contract sued on. The signs were built in plaintiff's plant at Omaha, Nebraska, and shipped via common carrier to the Acme Sign Service at Kansas City, Missouri, and the Acme Company erected the signs for plaintiff, and in addition was to do the maintenance work in servicing the signs such as cutting weeds or limbs which might obstruct the view of said signs, and repair any damage which might occur to the signs; and also secure leases in plaintiff's name. Plaintiff was to pay for all such work and service. *Plaintiff retained title to the signs erected.* It also obtained permits in its own name from the County Planning Commission to erect these signs.

The president of plaintiff company testified that in addition to the inspection and service made by the Acme Company and by Shelters, he came to Jackson County, Missouri, about every ninety days to inspect the signs; that one James Ware, its vice president, was in charge of plaintiff's service department and that he also came to Missouri to inspect and see that the signs were properly maintained; and that the plaintiff has many other advertising signs for other customers located in and near Kansas City, and other cities, in Missouri. Several months after these signs were erected a controversy arose between plaintiff and defendant whether the signs were being properly maintained, and on September 3, 1948, plaintiff wrote defendant stating, among other things, "Our service men are cutting weeds in and around Kansas City this week, and if there is anything the matter with your signs they will be taken care of." There was other correspondence between the parties wherein plaintiff acknowledged that it was its duty to check and maintain these signs and that it was doing so.

Concerning the point under consideration, the pleadings and the evidence establish the following facts: (1) the plaintiff is a "foreign corporation"; (2) it has never procured a "certificate of authority" to do business in this state; (3) its principal business is the manufacture of advertising signs or bill-boards, and shipping them into other states where, by contract, it is obligated to "erect" and "maintain" such signs and when so erected it leases the space thereon to a customer for a certain sum per month for a specified time (in the instant case 36 months) with the option for a renewal on the same terms and for a like period by the customer; (4) it retains title to the signs; (5) it secures, in its name, leases on real estate for the location of such signs; (6) that in addition to the monthly rental the customer must pay certain taxes; (7) that the customer "cannot cancel or terminate this contract, but * * * (must) make the payments above specified during the entire period stated"; (8) that if the signs are destroyed, damaged or removed without plaintiff's fault, during the term of the contract, such shall not terminate the contract, but its provisions are to be extended to cover such period that the signs were out of service; (9) that if the customer fails to make the monthly payments when due, then, at the option of plaintiff, all deferred payments become due and payable; (10) that plaintiff did secure certain leases on real estate in Missouri, and obtained permits for the erection of such signs from the County Planning Commission; and employed Acme Sign Service of Kansas City,

Missouri, to erect, maintain and repair said signs; (11) that plaintiff employed one Shelters to solicit customers in Kansas City, and to assist in obtaining lease sites for such signs and to make periodic inspections of the condition of the signs; (12) that plaintiff also employed James Ware, its vice president and superintendent of its service department to inspect and maintain the signs and to direct the maintenance crews; and (13) that plaintiff had many other contract customers for similar service in Missouri.

Was plaintiff *transacting business* in this state within the contemplation of the statutes referred to supra? We think so. The leading case in Missouri on facts somewhat analogous to those present here, is State ex rel. Hays v. Robertson, 271 Mo. 475, 196 S. W. 1132, 1135. Because of the clear statement of the rule distinguishing *interstate commerce* and *intrastate commerce,* we quote at length from that opinion: "We are of opinion that any foreign corporation, without taking out a license in Missouri under sections * * *, can under the commerce clause of the federal Constitution, unhindered wholly by us or by the laws of this state, *sell* its type-casting machines or other commodities to citizens of this state under such terms as it sees fit * * * [and] that it can likewise *sell* repair parts to purchasers of its products or machines, and agree to send its skilled workmen and operatives into this state, at the expense of the users of its machines, to erect the same and teach the manner of the operation thereof * * *. But we do not think that any foreign corporation can through a period of ten years engage in this state in the business of *renting* out *its property* at an annual rent reserved, and of collecting that rent yearly throughout rental periods of six years, without complying with our statutes licensing foreign corporations. * * * Interstate commerce, as to the particular phase confronting us, connotes trafficking transactions between citizens of different states, whereby the *title* of the seller in the commodity *sold* is transferred to the buyer, or agreed so to be upon the contingency of payment of the purchase

price by installments or otherwise * * *. Not one wherein the property of the quasi seller is moved bodily into this state and *leased* for a long term of years for an exorbitant annual rental and to be returned to such seller at the end of the rental period.

"The fact that in both cases the companies charged with transacting business in this state had resident agents here proves nothing. Agents, like transportation companies, are mere instrumentalities of commerce. Each is a necessity of commerce common to both intrastate and interstate commerce, and so factors which in nowise differentiate the one sort of commerce from the other. In interstate commerce the delivery of the commodity to the *purchasing* citizen of another state may be either in the domicile of the vendor or of that of the vendee; it may be for cash, or on time, by giving credit and taking back security, by payment in full or by installments, but, if the *title* to the commodity does not pass, and is not to pass, certainly the business is not traffic; *it is not buying and selling.* (Above italics ours.) It is but the bringing of the property of the foreign corporation into this state and so dealing therewith after it is in the state as to make of such property a source of income to the foreign corporation. In short, it is a continued dealing by the foreign company with the property in this state *after interstate commerce has wholly ceased its dealings therewith.* If such acts do not constitute transacting business in this state, it is difficult to conceive what would be necessary in order for a foreign corporation to transact business here."

The shipment of the signs from Nebraska into Missouri does not finally determine that plaintiff was engaged in interstate commerce. The very purpose of the contract was for certain *services* to be rendered by plaintiff to defendant for profit, all of which were to take place in Missouri.

For other cases discussing the same principles of law, see Amalgamated Zinc & Lead Co. v. Bay State Zinc Mining Co., 221 Mo. 7, 120 S.W. 31, 23 L.R.A.,N.S., 492; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, 109 S.W. 567; Mandel Bros., Inc.,

v. Henry A. O'Neil, Inc., 8 Cir., 69 F.2d 452; Browning v. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828; General Railway Signal Co. v. Commonwealth of Virginia ex rel. State Corporation Comm., 246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854; National Sign Corp. v. Maccar Cleveland Sales Corp., 33 Ohio App. 89, 168 N.E. 758; Clare & Foster, Inc., v. Diamond S. Electric Co., 66 Ohio App. 376, 34 N.E.2d 284; North American Service Co. v. A. T. Vick Co., Tex.Civ.App., 243 S.W. 549; Motor Supply Company v. General Outdoor Advertising Co., Tex.Civ.App., 44 S.W.2d 507; Cadden-Allen, Inc., v. Trans-Lux News Sign Corp., 254 Ala. 400, 48 So.2d 428.

In the cases of National Sign Corp. v. Maccar Cleveland Sales Corp., supra, and North American Service Co. v. A. T. Vick Co., supra, the fact situation is almost identical with that of the present case, and the statutes are substantially the same as ours. In both cases it was held the sign company was *doing business* within the State and could not recover on the contract because it had not obtained a certificate of authority from the Secretary of State.

The basic reasons for legislation of this kind is fully discussed in Roeder v. Robertson, 202 Mo. 522, 100 S.W. 1086, and we need not restate them here, other than to say that plaintiff is wrong in assuming that "the elimination of competition" is one of the prime reasons for such legislation.

■ In support of its contention that it was not doing business in this state contrary to the statutes plaintiff cites Republic Steel Corp. v. Atlas Housewrecking & Lumber Corp., 232 Mo.App. 791, 113 S.W.2d 155; International Text-Book Co. v. Gillespie, 229 Mo. 397, 129 S.W. 922; York Mfg. Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963; Hess Warming & Ventilating Co. v. Burlington Grain Elevator Co., 280 Mo. 163, 217 S.W. 493; Irvine Co. v. McColgan, 26 Cal.2d 160, 157 P.2d 847, 167 A.L.R. 934, and State ex rel. Hays v. Robertson, supra. We have read these cases and do not consider them controlling because of the different factual situations. In the Republic Steel Corp. case, we held that sales on consignment by a foreign corporation to a local factor was interstate commerce, and the presence of a sales office in the state did not convert the transaction to intrastate business. However, we recognized the rule that a determinative factor of whether the business was intrastate in nature was the question of continued dealing by the foreign corporation with the property after interstate commerce had wholly ceased, and whether that continued dealing was an isolated transaction or a continuing form of the business of the foreign corporation. That is the rule which is applicable in the instant case. In the York Mfg. Co. and Hess Warming & Ventilating Co. cases the foreign corporation had *sold* a certain complicated unit of machinery and sent its trained employe to the purchaser's state to superintend the installation of such machinery. The court properly held that the installation and testing of the machinery was a part of the interstate transaction. In the International Text-Book Co. case, the court held that the continual intercourse of ideas and instructions by mail from Pennsylvania to Missouri residents was commerce and interstate in character.

■ We think the controlling principle of law recognized in all of the cases we have read compels the conclusion that plaintiff was *doing business* in this state. It continued to deal with the signs after the interstate shipment had ceased and derived its sole profit from such dealings over a period of several years. The title to the signs remained in plaintiff, subject to its maintenance as above detailed and subject to being re-rented at the expiration of the original lease period.

■ In its brief plaintiff asserts that its signs were erected and maintained by an independent contractor residing in Kansas City, Missouri. We do not so understand the record. Shelters and the Acme Company were plaintiff's agents to carry out its obligations under the contract—in short, it transacted its business in Missouri partly through such agents.

It is our conclusion that the court erred in refusing defendant's offered declaration of law to the effect that plaintiff was doing business in Missouri in violation of the statutes, supra, and could not maintain this cause of action.

Defendant contends that it is entitled to recover on its counterclaim all payments it made under the contract because plaintiff breached the provisions thereof by not erecting and maintaining the signs at locations plainly visible to highway traffic. This is the *only* ground of recovery alleged in the counterclaim. All signs were erected, however there is evidence that plaintiff did not properly maintain, at least, some of the signs all of the time, but as to others there seems to be no basis for complaint. Thus there was no complete failure of consideration. Under such circumstances, is defendant entitled to recover by way of damages all payments it made? We think not, and defendant cites no authorities so holding. There was no evidence of any special or actual damages. In fact, the case was not tried on that theory. We think defendant is entitled to recover on its counterclaim if it can prove that plaintiff breached the contract and that defendant suffered certain, not speculative, damages as a result thereof; subject, of course, to any defenses plaintiff can properly assert. Young v. Gaus, 134 Mo.App. 166, 113 S.W. 735; Union Bank Note Co. v. Ajax Portland Cement Co., 155 Mo.App. 349, 351, 137 S.W. 18.

On this question of damages, plaintiff contends that under the contract defendant is not entitled to recover any damages even though there was a breach but must accept extended service for the time any of such signs were not properly maintained. This argument is based on the following provision of the contract: "If, however, for any cause beyond your (plaintiff's) control said displays are during said period destroyed, damaged or removed, shall not terminate this contract. Instead, contract is to be extended to cover such period of time displays were out of service." We do not think this provision necessarily prevents defendant from recovering proper damages if there is a breach of the contract for the reason that the *cause* of the signs being out of service must be for *reasons beyond plaintiff's control*. The evidence in the record does not show that fact and we would not be justified in holding as a matter of law that defendant must accept extended service instead of seeking damages.

The judgment is reversed and the cause is remanded with directions to dismiss plaintiff's petition and to grant defendant a trial on its counterclaim.

All concur.